[No. 13681.  Department One.  June 19, 1917.]

ELSIE G. RUGE, *Respondent*, v. EDWARD C. RUGE, *Appellant*.[1]

DIVORCE—ALIMONY—DECREE—RES ADJUDICATA—POWER TO MODIFY PERMANENT ALIMONY.  Where a decree of divorce is an absolute one and there are no minor children, and it awards periodical installments of permanent alimony without reserving to the court the power to subsequently make further orders, the award of alimony is *res adjudicata*, and the court, in the absence of statute, has no inherent power to change or modify the decree to meet altered conditions after the time limited by statute for the modification of judgments, the defendant not having appealed or attacked the judgment for fraud or mistake.

SAME.  The fact that a husband, unable to pay permanent alimony, cannot be cited for contempt, does not suspend the decree or authorize its modification, but only deprives the wife of one of the means of enforcing it until such time as the husband is able to pay it.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered October 6, 1915, upon sustaining a demurrer to the petition, dismissing an application to modify a decree of divorce respecting alimony.  Affirmed.

*S. M. Bruce* and *Romaine & Abrams*, for appellant.

*Craven & Greene*, for respondent.

WEBSTER, J.—This is an appeal from an order and judgment sustaining a demurrer to and dismissing a petition, the purpose of which was to obtain an order modifying a decree for alimony, payable in periodical installments, as fixed by a decree of divorce rendered in an action between the parties to this proceeding by the court to which the petition was addressed.  The material facts are as follows:

On November 16, 1912, a decree was rendered by the superior court of Whatcom county dissolving the bonds of marriage theretofore existing between plaintiff and defendant and adjudging, among other things, that the defendant

[1]Reported in 165 Pac. 1063.

and petitioner pay to the plaintiff as alimony the sum of $125 per month so long as the plaintiff should live. The decree was based upon findings to the effect, that the defendant had been guilty of cruelty toward the plaintiff; that he was a regularly licensed physician with a lucrative practice, and was actually earning from $500 to $1,000 per month; that plaintiff was physically frail and delicate and would never be well and strong; that she was not able to support or maintain herself by her own exertions, and that she was totally without means of support. On February 23, 1915, the defendant filed a petition entitled in the original cause, wherein he alleged in substance that, since the entry of the decree in the divorce action, the plaintiff had become well and vigorous; that his practice as a physician had materially fallen off; that business conditions had greatly changed, and that he was not financially able to pay the installments of alimony. He prayed that the amount of alimony be reduced; that the same be converted into a gross sum, to the end that he might pay the same either at one time or at such periods and in such installments as the court saw fit to provide. It is conceded that there were no children as the result of the marriage between plaintiff and defendant, and there is no reservation or provision in the decree whereby the allowance of alimony is subject to the further orders of the court.

To this petition, the plaintiff interposed a demurrer upon the grounds, among others, that it did not state sufficient facts to entitle defendant to the relief prayed, and that the court was without jurisdiction to entertain it. The demurrer was sustained, and the defendant electing to stand upon his petition, the same was dismissed. Defendant appeals.

The question presented for our consideration is this: Has the superior court which rendered the decree in the divorce action jurisdiction to modify the same in respect to the periodical installments of permanent alimony provided for therein, the divorce being an absolute one, there being no minor children of the parties, there being no provision in the

decree reserving to the court the power to subsequently make further orders relating to the alimony, but being absolute and final upon its face, there being no statute in this jurisdiction expressly, or by necessary implication, conferring upon the court the power to change or modify decrees in such cases to meet altered conditions, the defendant not having appealed from the decree nor moved or petitioned the court for its modification within the time limited by statute, and the decree not being attacked on the ground of fraud or mistake.

The question thus presented is one of first impression in this court, is exceedingly vexatious, and one upon which the authorities are in an unsatisfactory condition. Because of the great importance of the question, not alone to the defendant in this case, but to the public as well, and in the hope of bringing something approximating order out of the chaotic mass of judicial expression upon the question, we have made a painstaking examination of the authorities. From our investigation we are induced to conclude that what at first blush appears to be a hopelessly entangled skein of discordant and conflicting cases, upon closer analysis will be found not to be such, but that, by resorting to scientifically sound fundamental principles and by keeping in mind well established lines of demarcation, the question is one upon which there is not great actual conflict. Upon careful analysis, the cases seem naturally to arrange themselves into six well defined and distinct classes, each class being based upon sound fundamental principles and the rule pertaining to it being the result of clear logic. These classifications are as follows:

I.  Where the decree in the main action is one granting a divorce *a mensa et thoro*, which in modern parlance we refer to as a decree for separate maintenance. Cases falling within this class are controlled largely, if not entirely, by the thought that, inasmuch as the power of the court to award alimony in such cases is a power incident to the jurisdiction to regulate the rights of the parties growing out of and

pertaining to the marital status, and this status being un-
affected by the decree for legalized separation but continuing
to exist, the power to modify the decree in respect to ali-
mony to meet changed or changing conditions likewise con-
tinues to endure. This rule seems to have had its origin in
the ecclesiastical courts, where absolute divorces were never
granted. These tribunals sometimes entered decrees of an-
nulment for causes which rendered the marriage void *ab initio*,
but such decrees were not in the proper sense of the term
divorces; they amounted merely to an official declaration of a
preexisting fact, viz., that there had never been a valid mar-
riage between the parties. Absolute divorces were infre-
quently granted in England by acts of Parliament, and hence
it is that the granting of such divorces is, historically, a
legislative function. While inherently the matter of grant-
ing a divorce involves the judicial process, historically and
theoretically, the power to grant a divorce *a vinculo* is purely
legislative. Consequently there is no inherent jurisdiction in
the common law courts to grant a divorce absolutely severing
and cancelling the marital bonds; but they have only such
power with respect to granting absolute divorces as the legis-
lative department in the particular jurisdiction sees fit to
expressly confer upon them, or such as are necessarily im-
plied from those expressly given them. In an early English
case, however, after careful consideration and debate, it was
determined that the rules announced and acted upon by the
ecclesiastical courts were part and parcel of the common
law. In cases of divorce from bed and board, therefore, the
courts of the common law, exercising the powers formerly
exercised by the ecclesiastical courts, have authority to mod-
ify decrees relating to alimony. The continued existence of
the status of marriage, upon which the power to grant de-
crees of alimony depends, carries with it the continuing
power to modify or alter the allowance of alimony to meet
new conditions.

II.   The second class includes the cases where the alimony awarded is temporary or *pendente lite,* as distinguished from permanent.   In these cases the power to modify exists for reasons which are perfectly obvious.   While the cause is still pending in the court of first instance, the power to make any appropriate order in the premises clearly exists.   The court has the same power to modify its order with respect to temporary alimony that it has to make any other appropriate order in a case pending in court.

III.   This class includes cases where there are minor children of the parties to the divorce action, and the courts of all the states are at one upon the proposition that, so far as the decree of alimony is for the benefit of the minor children of the spouses, the power to modify the decree continues so long as there are minor children under the protection of the court.   While in cases dealing with this aspect of the question the courts have not always paused to state the fundamental principle upon which the right to modify is based, it is manifest in reading them that the dominant thought and controlling circumstance in the cases is the fact that there are minor children to be cared for as wards of the court.   As it seems to us, the true basis upon which the power to modify the decree in these cases rests is that out of the marital relation springs a new relationship, viz., that of parent and child.   Palpably neither executive edict, enactment of legislature, nor decree of court can change the relationship existing between parent and child.   The courts may decree that the marital tie shall be absolutely severed and the parties be placed, so far as the law is concerned, in the same situation that they occupied prior to the solemnization of the marriage ceremony; but they cannot alter or modify the fact that a father is the parent of his offspring.   This parental relationship, springing as it does from the relationship of marriage, is to this extent incident to the marital status.   But the duty of the father, if he has means with which to do so, to support his infant children springs imme-

diately from the parental relationship. As this relationship, incidental as it is to the marriage state, continues to exist after the status out of which it arose has been terminated, either naturally, as by death, or artificially, as by divorce, the duty incident to that continuing relationship still exists. The right of the wife to alimony arises immediately out of the marriage contract, but the right of the child to support at the hands of its parents springs from the incidental relationship which had its origin in marriage, to wit, that of parent and child. The court, therefore, acting upon this relationship as one of the things brought to it by the divorce action, has the power to modify or alter its decree so long as there are minor children under the protection of the court.

IV. Comprising this class are the cases where the court, by express provision in its decree, reserves to itself either all or a portion of its power to provide alimony for the wife or maintenance for the children. In such cases, the decree is not final and conclusive as a matter of law, because it does not purport to be final and conclusive as a matter of fact. The reservation in the decree plainly indicates an unfinished determination of the judicial mind; that is, the court has not completely disposed of the case. The power of the court not having been exhausted, it reserves to itself the right to exercise the unexhausted portion of its power in such manner as changed conditions and circumstances may indicate to be just. As a judgment in any kind of action thus inconclusive and incomplete is not final, so, also, it is not final in a decree relating to alimony. The cases are in harmony that, where the power to modify is thus expressly reserved in the decree, the tribunal reserving it has the power to exercise it to meet changed or changing conditions thereafter arising.

V. In this division are included the cases where, by statute in the particular jurisdiction, power is expressly conferred upon the court to, from time to time, on the petition of either of the parties, revise or alter its judgment or decree

respecting the amount of alimony or maintenance. Comment on this class of cases is unnecessary. Suffice it to suggest that the legislative department of the state, being the repository of all the power concerning absolute divorce and its incidents, may, if it sees fit, delegate this power to courts, in the absence of constitutional inhibition.

VI. In this class fall all of the cases not included in the foregoing classifications, viz., cases where the divorce is absolute, the alimony awarded is permanent, there are no minor children, there is no express reservation in the decree, and there is no statute in the particular jurisdiction expressly, or by necessary implication, conferring upon the court the authority to modify or alter its decrees in respect to alimony for the support of the wife. It is in this class that the case now under consideration is included.

The question, May decrees in this class of cases be modified? seems to carry its own answer. The status to which the power to award alimony is incident having, by judicial mandate, ceased to exist; the court having exercised all of the power in the premises that it possessed; there being no continuing relationship of parent and child to which the power to modify may be referred, the alimony in question involving the right of the wife only; the judgment or decree, by its terms, purporting to be final and conclusive upon the question; and there being no statute conferring upon the court the power to modify, there is no other source of authority to which we may look. The answer is scientifically and logically irresistible that such power does not exist. We must disabuse our minds of the thought that there is any peculiar mystery attaching to decrees of divorce and alimony merely because they are such. But if they and their incidents are to be treated differently from ordinary judgments and decrees, it must be so because of some scientifically and logically sound basis upon which they can be considered as exceptions to the general rules. Unless this be true, our boast that the law is a science is a mockery and a sham, and judicial tri-

bunals will be left to embark upon a thick and uncertain sea with neither chart nor compass. In such a situation, the judicial expressions upon the question, in the very nature of things, will result in a mass of conflicting and discordant utterances, referable to no principle of law, either substantive or adjective. Fortunately, however, the courts of the country have not fallen into the error of considering a decree for alimony or maintenance as a thing apart, but, speaking generally, have developed a jurisprudence pertaining to the question in keeping with sound fundamental principles. It is elementary that an adjudication by a court having jurisdiction of the subject-matter and of the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties ought to have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. Consequently, when the question of alimony is in fact actually litigated and finally determined in the divorce action, as it is in this class of cases, a judgment or decree in the action operates as *res judicata* upon the question of alimony. We therefore confidently assert that it is sustained, both in principle and by the great weight of authority, that, where permanent alimony is awarded as incidental to the granting of an absolute divorce, and there are no minor children of the parties, and the court does not reserve to itself the right to thereafter exercise an unexhausted portion of its power, but actually exhausts its jurisdiction at one time, and there is no statute conferring upon the court the power to modify or alter its decrees in respect to the allowance of alimony to meet new conditions thereafter transpiring, and the time for appeal or review has expired, and the period limited by law within which judgments may be modified on motion or petition has elapsed, and the judgment is not attacked on the ground of fraud or mistake, the court has absolutely no jurisdiction to change its decree, but possesses only the right

to enforce obedience to it. *Sammis v. Medbury*, 14 R. I. 214; *Sampson v. Sampson*, 16 R. I. 456, 16 Atl. 711, 3 L. R. A. 349; *Smith v. Smith*, 45 Ala. 264; *Petersine v. Thomas*, 28 Ohio St. 596; *Kamp v. Kamp*, 59 N. Y. 212; *Kerr v. Kerr*, 59 How. Pr. (N. Y.) 255; *Erkenbrach v. Erkenbrach*, 96 N. Y. 456; *Coffee v. Coffee*, 101 Ga. 787, 28 S. E. 977; *Spain v. Spain* (Iowa), 158 N. W. 529; *Hardin v. Hardin*, 38 Tex. 617; *Shepherd v. Shepherd*, 1 Hun 240; *Livingston v. Livingston*, 173 N. Y. 377, 66 N. E. 123, 93 Am. St. 600, 61 L. R. A. 800; *Fries v. Fries*, 1 McArthur (D. C.) 291; *Howell v. Howell*, 104 Cal. 45, 37 Pac. 770, 43 Am. St. 70; *Mitchell v. Mitchell*, 20 Kan. 665; *Stratton v. Stratton*, 73 Me. 481; *Mayer v. Mayer*, 154 Mich. 386, 117 N. W. 890, 129 Am. St. 477, 19 L. R. A. (N. S.) 245; *Martin v. Martin*, 6 Blackf. (Ind.) 321; *Walker v. Walker*, 155 N. Y. 77, 49 N. E. 663; *Bacon v. Bacon*, 43 Wis. 197; *White v. White*, 130 Cal. 597, 62 Pac. 1062, 80 Am. St. 150; *Silliman v. Silliman*, 66 Ore. 402, 133 Pac. 769; *Buckminster v. Buckminster*, 38 Vt. 248, 88 Am. Dec. 652 (note); *Johnson v. Johnson*, 12 Daley's (N. Y. C. P.) 232; *Methvin v. Methvin*, 15 Ga. 97, 60 Am. Dec. 664 (note); 2 Am. & Eng. Ency. Law (2d ed.), p. 135; 1 R. C. L. 946; 9 R. C. L. 439; Brown, Divorce, p. 278; 2 Nelson, Marriage and Divorce, § 933-a; Stuart, Marriage and Divorce, § 366.

Mr. Bishop in his valuable treatise on Marriage, Divorce and Separation, vol. 2, § 872, states:

"Because the procedure of a court always bends with the right to which it gives effect, it early became and it remains the doctrine in the country whence our laws are derived, and it is accepted and practiced upon by a considerable proportion of our American tribunals, that the court may at any time and from time to time, on any change in the circumstances of the parties, increase or reduce the sum allotted for alimony, temporary or permanent."

In support of this rather broad general statement, the following cases, which we are about to notice, are cited:

*Otway v. Otway*, 2 Phillim. 109. In this case, decided by

the ecclesiastical court, the divorce was one from bed and board, and the question of permanent alimony was expressly reserved in the decree. The case of *Cook v. Cook*, reported in the same volume at page 40, upon which the *Otway* case was based, is likewise a case of divorce *a mensa et thoro*. *Rogers v. Vines*, 6 Ire. Law (28 N. C.) 293: In this case the divorce was one from bed and board. *Richmond v. Richmond*, 1 Green Ch. (2 N. J. Eq.) 90: This case is based squarely upon a statute conferring upon the court the power at any time, on a change of circumstances, to vary the allowance of alimony by increasing or diminishing it, and the decree involved the rights of minor children. *Bursler v. Bursler*, 5 Pick. (Mass.) 427: The divorce in this case was from bed and board. *Holmes v. Holmes*, 4 Barb. (N. Y.) 295: This case is one where the divorce was *a mensa et thoro*. *Barber v. Barber*, 1 Chand. (Wis.) 280: The decree in this case granted a divorce from bed and board. *Sheafe v. Sheafe*, 36 N. H. 155: The opinion in this case is based upon a statute of New Hampshire expressly empowering the court to modify its decrees in such cases. *Saunders v. Saunders*, 1 Swab. & Tr. 72: The divorce in this case was from bed and board. *Foote v. Foote*, 22 Ill. 425: The decree involved the rights of minor children, and was rendered in a state having a statute expressly conferring upon the courts the power to modify decrees in divorce cases. *Sparhawk v. Sparhawk*, 120 Mass. 390: The decision is based upon a statute conferring the power to modify. *Coad v. Coad*, 41 Wis. 23: This case is based upon a statute of Wisconsin expressly conferring the power to modify decrees in such cases. *Williams v. Williams*, 29 Wis. 517: The power exercised was expressly reserved in the decree and the case is based upon a statute. *Waters v. Waters*, 49 Mo. 385: The allowance was for temporary alimony made, of course, during the pendency of the action. *Ellis v. Ellis*, 13 Neb. 91, 13 N. W. 29: This case is based upon an

express statute of Nebraska empowering the court to modify
its decrees in reference to alimony from time to time.  *Olney
v. Watts*, 43 Ohio St. 499, 3 N. E. 354:  This case, stripped
from the authorities upon which it is based, would seem to
sustain the general statement in the text that all decrees
for alimony might be modified or changed to meet new con-
ditions.  It is, however, based in part upon Mr. Bishop's
former work on the Law of Marriage and Divorce, § 429,
where the same authorities are referred to as those above
noted and reviewed.  It also cites the rule announced by Dr.
Lushington in the ecclesiastical court where, as we have al-
ready observed, the decrees were always from bed and board
merely.

In addition to the authorities contained in the foot note
to Bishop on Marriage, Divorce and Separation, the cases
of *Fisher v. Fisher*, 32 Iowa 20; *McGee v. McGee*, 10 Ga.
477; *Wheeler v. Wheeler*, 18 Ill. 39, and *Lockridge v. Lock-
ridge*, 2 B. Mon. (Ky.) 258, are cited.  In the *Fisher* case,
the opinion is based upon a statute of Iowa providing that,
after a divorce is granted, subsequent changes may be made
by the court in reference to maintenance of the wife, when
circumstances render them expedient.  The *McGee* case was
one dealing with the question of temporary alimony.  In the
*Wheeler* case, the question was considered on appeal from
the original decree, so that palpably no question of subse-
quent modification was involved, and the rather loose, general
language contained in the opinion with reference to the right
to modify such decrees was pure dictum.  In the *Lockridge*
case, the decree granted a divorce from bed and board only,
as will be seen from the statement of the case on a former
hearing in the Kentucky court of appeals.  *Lockridge v.
Lockridge*, 3 Dana 28, 28 Am. Dec. 52.  It is therefore
evident that the authority upon which the *Olney* case is based
does not warrant the conclusion reached in it.  The sound-
ness of this case has also been questioned by the learned

tribunal which rendered it. In *Law v. Law*, 64 Ohio St. 369, 60 N. E. 560, it is said:

"The view presented by counsel for the plaintiff in error is that the terms of the original decree, not being affected by fraud or mistake, were conclusive upon the subject of alimony and not subject to modification for any reason. Since no question was reserved by the decree for future consideration, that view receives strong support from *Petersine v. Thomas*, 28 Ohio St. 596, and from the general course of decisions upon the subject. Authority for the subsequent modification of the decree is, however, said to be found in the later case of *Olney v. Watts*, 43 Ohio St. 499. . . . *If it be assumed that the case was correctly decided, it affords no warrant for the present judgment.*"

Thus it will be seen that not one of the cases, save the *Olney* case, is in point in this case. They are all distinguishable in that they are either divorces from bed and board, cases relating to alimony *pendente lite*, where the rights of children are involved, where the power is expressly reserved in the decree, or is based upon a statute expressly conferring it. Not one of them, except the *Olney* case, is a case where the decree was absolute, the alimony permanent, the rights of children were not involved, there was no reservation in the decree, and no statute authorizing the change. And we have endeavored to show that the *Olney* case is not sound, in that the authorities upon which it is based do not sustain it.

14 Cyc. at page 784, in discussing the question here under consideration, uses this language:

"A decree for permanent alimony is subject to modification because of fraud or mistake in the same manner and under the same circumstances as other decrees. The general rule would seem to be that, where the divorce is absolute a decree for permanent alimony containing no reservation of the power of modification cannot be altered after the expiration of the time within which an appeal may be perfected, *although it has been held that the court may modify a decree for alimony at any time upon proper allegations of the changed conditions and circumstances of the parties.*"

In support of the latter statement, it cites a number of the same cases referred to by Mr. Bishop and the cases cited in *Olney v. Watts, supra,* which we have already reviewed. In addition the following cases are cited, upon which we shall comment in passing:

*Stevens v. Stevens,* 31 Colo. 188, 72 Pac. 1061: The entire opinion in that case is as follows:

"By virtue of the general equity powers of a court granting a divorce as well as by virtue of the provisions of Sec. 9 of the Divorce act, Session Laws, 1893, p. 240, such court has the authority to modify the decree relative to alimony payable in the future, and the custody and control of minor children, as the changed circumstances of the parties may render necessary and just. *Richmond v. Richmond,* 2 N. J. Eq. 90; *Sheafe v. Sheafe,* 36 N. H. 155; *Coad v. Coad,* 41 Wis. 23; *Foote v. Foote,* 22 Ill. 425. There are no decisions of this court or the court of appeals to the contrary. The judgment of the county court is reversed, and the cause remanded, with directions to overrule the demurrer to the petition. Reversed."

It will be seen that the cases cited have all been distinguished in discussing the cases cited by Mr. Bishop. Justice Steele wrote a dissenting opinion which was concurred in by the Chief Justice, wherein he pointed out that the Colorado statute did not confer the power to modify, and in the course of the opinion said:

"The authorities cited in the opinion are not in point. In New Jersey, New Hampshire, Wisconsin and Illinois the statutes provide that, after final decree the court shall have power to change or modify it in accordance with the changed circumstances of the parties."

*Andrews v. Andrews,* 15 Iowa 423, and *Jungk v. Jungk,* 5 Iowa 541: Both of these cases are based upon the same statute referred to in *Fisher v. Fisher, supra.  Bristow v. Bristow,* 21 Ky. Law 481, 51 S. W. 819: In this case the alimony allowed was for the benefit of the wife and a minor child, and, as we have already noted, the jurisdiction in

such cases, as it relates to children, is continuing. The general language found in the opinion will be understood by reading § 2123, Kentucky Statutes.

*Barbaras v. Barbaras*, 88 Minn. 105, 92 N. W. 522: This case is based upon a statute conferring upon the court the power to modify, being § 4809, General Statutes of 1894. *King v. King*, 38 Ohio St. 370: In this case the alimony was *pendente lite*, and the question involved was the power to increase it. *Whitton v. Whitton*, 71 L. J. P. & Adm. 10: This was an action for the purpose of varying a marriage settlement, and was based upon the matrimonial causes act. None of these cases, in our opinion, in any way militate against the rule as we have heretofore stated it applicable to the class of cases we are now considering.

In our examination of the authorities we have found three cases which we deem worthy of special notice. These are *Alexander v. Alexander*, 13 App. Cas. D. C. 334; *Emerson v. Emerson*, 120 Md. 584, 87 Atl. 1033, and *Francis v. Francis*, 192 Mo. App. 710, 179 S. W. 975. In the *Alexander* case, the court seems to have adopted the rule that, where the alimony awarded to the wife is payable in installments, the court has the power to subsequently change it, even though it was allowed in a case where the divorce was absolute and there was no reservation in the decree giving to the party who sought the modification the right to petition the court therefor. In reading the opinion, however, it is plain that the conclusion was induced somewhat by the acts of Congress relating to the District of Columbia. That this is so is indicated by the opinion in *Emerson v. Emerson*, *supra*. In that case Justice Constable, commenting upon the *Alexander* case, said:

"It declared the jurisdictional right of modification existed in virtue of the acts of Congress, which acts are virtually in the language and meaning of our acts."

No authorities are cited in support of the conclusion reached in the *Alexander* case, in the absence of statute, but

it is sought to distinguish that case from the cases from Maine, Rhode Island, New York, Ohio, Alabama, and Kansas, and one from its own court, upon the thought that the alimony allowed in most of those cases was in gross and was not alimony in the proper sense of the term; that is to say, the alimony was not payable in periodical installments but was an arrangement of property interests between the parties. It is admitted in the opinion, however, that, in two of the cases sought to be distinguished, the alimony allowed was payable in monthly installments of indefinite continuance. In the course of the opinion the court says, at p. 592:

"It is conceded on the part of the appellant, that upon good cause shown of inability on the part of the husband to pay the alimony, the court might order a suspension of payment, and would not, or rather should not, punish him as for contempt of court. But it seems to us that this concession virtually concedes the whole case. If the decree for the amount of alimony is of the rigid, inflexible, and unchangeable character claimed for it in the bill of review now before us, it is not apparent how it can be suspended any more than it can be modified by a reduction of the amount."

We are unable to subscribe to this reasoning. It seems to us to confuse the means of enforcing the decree with the power to modify it. In the event the delinquent husband is cited for contempt and it is made to appear that he is unable to pay, the wife is simply deprived of one of the means provided by law for the collection of her alimony. The decree, however, is in no sense modified or suspended, but remains unaltered and in full force, and if the husband should subsequently acquire property or become able to pay, he could be compelled to satisfy the decree according to its precise terms. If an execution is issued upon a judgment in an ordinary action and is returned by the sheriff "no property found," would it be contended that the judgment had been altered? In the latter, as in the former case, the holder of the judgment is merely deprived of one of the means by which

it·may be enforced. It will not do to say that the inability to enforce a judgment or decree either suspends it or works a· modification of its provisions.

. It is next argued that it is conceded that, if there is a reservation in the decree in favor of the one seeking to have the allowance of alimony changed, he or she may apply to the court at any time for a modification and the court would have authority to make it. Then follows this statement, at page 593:

"And yet it is not quite apparent how the court could have well reserved to itself the authority to modify a decree if that authority was not already vested in it by law."

In our opinion, this argument overlooks the principle upon which the rule rests, that where the decree contains a reservation, the power to modify exists. By such a reservation the court does not undertake to confer jurisdiction upon itself. It merely reserves the right to exercise the unexhausted portion of jurisdiction which it already has. As we have heretofore pointed out, the reason such decrees are not conclusive as a matter of law is because they do not purport to be conclusive as a matter of fact. We freely confess that many reasons of practical convenience may be urged in favor of the conclusion reached in the *Alexander* case, and these, no doubt, have had their influence in causing the legislatures in most of the states to enact statutes expressly conferring upon the courts the power to alter or modify decrees relating to alimony, but the very existence of such statutes is at least some argument that the courts did not possess the power to modify in all cases prior to the enactment of the statutes. What was the necessity for such statutes if the courts, prior to their enactment, possessed the power to modify their decrees in all cases relating to alimony?

In the *Emerson* case (p. 589), the statute of Maryland provided:

"The courts of equity of this state shall and may hear and determine all causes for alimony in as full and ample man-

ner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there."

The statute also conferred upon the courts of equity power to grant alimony in all cases where divorces were granted, and there was no definition of alimony in the statute. It was, therefore, concluded that, as the power of the court was like that of the ecclesiastical courts of England, and that such courts had power to modify their decrees relating to alimony, the courts of Maryland likewise possessed that power by virtue of the statute, regardless of the nature of the decree to which the award of alimony was incident, and cited with approval the *Alexander* case with the comment, among others, heretofore quoted.

In the *Francis* case, the supreme court of Missouri recently discussed the question now before us at some length, notwithstanding the decree in that case contained the provision: "Until the further orders of this court," and further that, by § 2375 of the Revised Statutes, 1909, of Missouri, it is provided that, on application of either party, the court may make such alterations in its decrees relating to alimony or maintenance as may be proper at any time. In the course of the opinion, it is said that the case of *Alexander v. Alexander, supra,* was cited approvingly by the supreme court of the United States in *Audubon v. Shufeldt,* 181 U. S. 575. An examination of the *Audubon* case will disclose that the appeal in that case was from the District of Columbia, and the question presented was whether a judgment rendered in the state of Maryland requiring Shufeldt to pay alimony to his divorced wife at the rate of $50 per month was such a debt as might be discharged in bankruptcy. In commenting upon the law of Maryland and the District of Columbia, it notices, among other cases, the *Alexander* case. In determining the character of the judgment, the supreme court would look to the laws of the jurisdiction in which it was rendered, and the Maryland court has since approved the holding in the *Alexander* case as being based upon statutes

similar to its own.  Mr. Justice Gray, in the course of his opinion in the *Audubon* case, said that: "Generally speaking," alimony may be altered at any time as the circumstances of the parties may require.  To this statement of the rule we subscribe, but cases of the character we are now considering are very exceptional.

We cannot, without inordinately extending this already too long opinion, undertake to discuss at length the cases from our own jurisdiction.  We have endeavored to examine all of them, and our investigation discloses that, whenever a decree has been modified, it has been in a case where the right to modify was expressly reserved in the decree or the rights of children were involved; and in the latter class of cases, this court has said in varying forms of words that, where alimony is awarded for the support of children, the decree is a continuing one and the jurisdiction of both the parties and the subject-matter continues so long as there is a minor child whose welfare and maintenance are provided for in the decree.  If the power to modify decrees relating to children terminates when there is no longer a minor child whose welfare and maintenance are provided for in the decree, does it not necessarily follow that, if there had been no minor child, the power to modify would not have existed in the first instance?  As the result of our study of the authorities, we are induced to conclude that, where the divorce is from bed and board and the decree provides for the payment of alimony, it may be modified to meet changed conditions, because of the continuance of the status of marriage, and further, because the common law courts have inherent jurisdiction in such cases, the rules of the ecclesiastical courts being a part of the common law; that where the alimony is temporary, it may, of course, be changed during the pendency of the action; where the alimony is for the purpose of providing maintenance for minor children, the decree may be modified so long as there are minor children to be cared for, the duty to support the child springing from the

parental relation which continues to subsist after the marital status in which it had its origin has terminated; that where the decree contains an express reservation of the power to modify, the court may thereafter exercise the unexhausted portion of its jurisdiction, the judgments in such cases not purporting to be final; where the right to modify is conferred by statute, it clearly exists regardless of whether the decree be one of absolute divorce or mere separation. But that, both upon principle and authority, where the decree grants an absolute divorce and permanent alimony, though payable in installments, is allowed, and there are no minor children to be cared for, and the decree contains no reservation of jurisdiction, and there is no statute conferring the power to modify, after the time for appeal has expired and the time limited by statute within which judgments may be modified has elapsed, and the judgment is not attacked upon the ground of fraud or mistake, there is no power in the court to modify or alter it to meet changed conditions.

The judgment is affirmed.

ELLIS, C. J., MORRIS, and MAIN, JJ., concur.

CHADWICK, J. (concurring)—That the sea of matrimony is "thick and uncertain" with neither chart nor compass to guide the mariner who embarks upon it is well understood. Judge Webster has most ably read the chart which marks the tortuous channels that lie in front of those who divide the life belt and thenceforward drift alone. His opinion is sustained by authority, and as it demonstrates the state of the law, it seems to me that it as clearly demonstrates a necessity for curative legislation. After a marriage has been dissolved by divorce and alimony awarded the one divorcee—it is not regarded as chivalrous to award alimony to the other—there is no reason, except in law, why the parties should not be subject to the call of changed conditions.

The grass widow may marry again, or may prosper upon her own account. In either event, the rejected spouse should be freed of the burden of support. Or the grass widower

may become poor, or again marry, and happily, in which case society should concern itself to see that a tie that is broken between persons intolerable to each other does not become a club of revenge and hate in the hands of the one or a mill stone about the neck of the other.

As I have said, every reason, the dictates of common sense, the interest of society, and the logic of our statutes defining the status of married persons—save the law—call for a different rule.

It might well behoove the legislature of this state to put us in line with other states where the evil to which we are bound by authority has been cured by appropriate legislation.