**16 P.(2d) 933**

**LORD v. LORD.**

**No. 3675.**

Supreme Court of New Mexico.

Nov. 29, 1932.

E. R. Wright and Donovan N. Hoover, both of Santa Fé, for appellant.

Roberts, Brice & Sanchez, of Santa Fé, for appellee.

WATSON, J.

Appellant, former wife of appellee, obtained an absolute divorce from the latter April 14, 1930. The judgment divided between the parties the care and custody of the two children, and awarded to appellant for the maintenance of the child committed to her custody the sum of $50 per month. Finding appellant to be "without personal independent means or property," the monthly sum of $100 "in the nature of alimony" was awarded to her so long as she should remain single, and to terminate upon her marriage, "being specifically alimony for the support and maintenance of plaintiff."

A conclusion of law, incorporated in the judgment, runs: "The court, however, retaining jurisdiction of the provisions of this decree for the * * * payment of alimony * * * with the right and power in court to readjust said payments to be made in the nature of alimony to the plaintiff * * * for good cause shown upon the application of either of the parties. * * *" The adjudicating part of the decree contains this: "That jurisdiction of this cause is hereby specifically retained by the court for the purpose of making all such further orders and decrees as may be necessary in connection with the * * * payment of alimony to the plaintiff."

Scarcely five months later appellee filed the present petition to be relieved from further payments of alimony, which, after answer and hearing, the court granted. This appeal resulted.

Appellant contends, both that the court lacked power to modify the decree, and that, given the power, he erred in modifying it on the existing facts. We consider the power first.

The divorce statute (1929 Comp. St. c. 68, art. 5 [sections 68-501 to 68-511]) does not authorize the court to reserve jurisdiction in the matter of alimony, or to decree concerning it otherwise than finally, except during the pendency of the suit. Neither does the Code of Civil Procedure, so far as we are aware, authorize reservation of jurisdiction in any matter or cause. Yet it is familiar practice in equity.

The statute does not authorize a court to reserve jurisdiction of the custody, maintenance, etc., of the minor children. The statute itself reserves it. Id. § 68-506. The court could not, if it would, divest itself of such continuing jurisdiction. The fact does not argue against the court's power, in its discretion, to reserve jurisdiction in the matter of alimony. It merely shows that the Legislature did not see fit itself to reserve or continue the jurisdiction.

A decree for any sum or sums of money as alimony operates as a judgment lien upon the husband's property. Id. § 68-507. This is not the occasion for determining the meaning or effect of that provision. We cannot under any view ascribe great force to it here, where the only question is as to the court's power to reserve jurisdiction to modify the amount of an indefinite number of monthly payments.

Pure alimony, provision for the wife's maintenance, such as we have here, is difficult to fix finally and definitely with any assurance that it will continue reasonable and just, however carefully considered or wisely adjusted at the time. Naturally the legal status of the parties and their property interests must be definitely and finally settled by the decree. Not so with alimony. The law contemplates such alimony "as under the circumstances of the case may seem just and proper." Id. § 68-506. Changed circumstances may frequently render the decree unjust and improper. The wife may marry one able to support her luxuriously. The husband any lose his means. We shall not readily yield to the contention that the court is without discretion to provide for such changed conditions.

Authorities from other jurisdictions cited by appellant have been consulted and found not in point. Weld v. Weld, 28 Minn. 33, 8 N. W. 900, holds that a decree of separate maintenance can be modified only upon new facts, or, perhaps, upon old facts newly discovered. We need not question that doctrine. Decisions cited by appellee are to the same effect, and we understand him here to rest his case upon the showing of changed circumstances.

An annotation in 71 A. L. R. 723, discusses "Power, in absence of reservation by statute or decree, to modify provision in decree of divorce or separation as to alimony or separate maintenance." On that question of inherent power there seems to be conflict. But none of the cases there collected question the inherent power to reserve in the decree itself the right to modify the alimony provision. Many of them assume the existence of such power. Ruge v. Ruge, 97 Wash. 51, 165 P. 1063, 1065, L. R. A. 1917F, 721, an able and much-cited opinion, says: "The cases are in harmony that, where the power to modify is thus expressly reserved in the decree, the tribunal reserving it has the power to exercise it to meet changed or changing conditions thereafter arising."

Appellant strongly relies on Hodges v. Hodges, 22 N. M. 192, 159 P. 1007, 1009, and particularly upon this expression therefrom: " * * * The powers of courts in matrimonial matters in this country are to be determined entirely upon the terms of the statutes conferring the jurisdiction." She contends that under this pronouncement we have but to read the statute and deny the power, since it is not there expressed.

Appellant claims much more for this statement than we can concede. Considering the context, it means, as said in the same paragraph, that the ecclesiastical law "as a system of substantive and remedial law" is not a part of New Mexico jurisprudence. It was decided merely that the power of the English ecclesiastical courts to grant divorce a mensa et thoro has not descended to the courts of this state, that the latter must look to the statute for the jurisdiction, and that, if for a given cause the statute gives the right to a divorce ex vinculo matrimonii, the party proving such cause cannot be put off with a divorce a mensa.

The quoted expression, standing alone, lends some support to the idea that divorce is a special statutory proceeding, and that the court is without any implied, inherent, or analogous powers. But such is not the statute nor the state of the decisions.

The power to grant divorce from the bonds of matrimony implies certain results upon the status and rights of the parties not expressed in the statute but to be gathered from common understanding and current authority. So with the power to award alimony, a term not defined by the statute, but well understood. It is prescribed (section 68-501) that the proceedings shall be according to the Code of Civil Procedure.

The first New Mexico legislation regarding divorce which we have found is Laws 1872, c. 15. It consisted of one section. It validated divorces theretofore granted by the district courts, and for the future limited the grounds to three. C. L. 1884, § 998. Prior thereto it seems to have been considered that the civil law was in effect, that a competent tribunal might decree separation from bed and board, and that the equity side of the district court was such tribunal. Martinez v. Lucero, 1 N. M. 208.

In 1884 (chapter 15) the Legislature required the complaining party to prove residence of six months and authorized service by publication. In 1887 (chapter 33) two additional grounds for divorce were prescribed. C. L. 1897, §§ 1431–1433. In the meantime, in 1876, the common law had been adopted. 1929 Comp. St. § 34-101.

In 1890 equity was recognized as having inherent powers in divorce proceedings not derived from nor dependent upon statute, but growing out of the necessities of the situation. Lamy v. Catron, 5 N. M. 373, 23 P. 773. Under the present statute, inherent powers have been recognized. Taylor v. Taylor, 19 N. M. 383, 142 P. 1129, L. R. A. 1915A, 1044; Oldham v. Oldham, 28 N. M. 163, 208 P. 886.

So we conclude that the district court was within its jurisdiction in reserving the power to modify its decree as to alimony. We come to the questions of error in exercising it.

█ The trial court found these changes in "the circumstances of the case"; That appellee has remarried and is supporting a stepchild; that since the original arrangement his debts have grown from $2,300 to $3,500; that appellant now makes her home and lives with her father as a member of his family; that the father is a man of great wealth, amply able to provide for appellant, and actually providing for her all the comforts of life; and that appellant does not require alimony.

The court also found that, at the time of the original award of alimony, appellee "was (so) confused over the breaking up of his home that he did not take proper precautions to protect his own interests."

The earnings and income of appellee not having changed, his ability to pay having been impaired only as the natural result of his voluntary assumption of new ties and obligations; appellant's total lack of personal independent means or property remaining unchanged; her present nonrequirement of alimony being predicated, not on any earnings of her own, or ability to earn, not upon a remarriage as contemplated by the decree, but merely upon her father's bounty—it is apparent that this is not one of those cases of changed circumstances which calls so loudly for the existence of the power we hold the court to possess; not a case where alimony has "become a club of revenge and hate in the hands of the one, or a millstone about the neck of the other." Chadwick, J., in Ruge v. Ruge, supra. Are these findings sufficient? Appellant thinks not.

She first contends that the new circumstance of supporting a stepson should not have been considered, since appellee was not legally obligated to such support. We do not pause to determine this question of legal obligation. The support of a four year old boy cannot be a great burden upon an income of $500 per month, and could not have been an important factor in the decision to reduce monthly alimony from $100 to nothing.

Counsel seem to agree that the remarriage of the husband, and the new obligation of support thus assumed, will not alone justify

reduction of the alimony. It is a circumstance which may in some cases require consideration. The law left appellee free to remarry and obligates him to support his present wife. If he were unable to support her and pay the alimony, the necessities of the case might require an adjustment as between the two obligations. This view finds support in, or is at least consistent with, decisions cited by both counsel. Newburn v. Newburn, 210 Iowa, 639, 231 N. W. 389; Langrall v. Langrall, 145 Md. 340, 125 A. 695, 37 A. L. R. 437; Simpson v. Simpson, 51 Idaho, 99, 4 P.(2d) 345; Herrett v. Herrett, 80 Wash. 474, 141 P. 1158; Morrison v. Morrison, 208 Iowa, 1384, 227 N. W. 330; Boniface v. Boniface, 179 Ark. 738, 17 S.W.(2d) 897; Lamborn v. Lamborn, 80 Cal. App. 494, 251 P. 943. We have no such case here. The court has not found that appellee cannot comfortably and suitably support his wife, his own eight year old son, and his stepson, on $350 per month remaining of his admitted earnings, after the payments required by the decree. It was found merely that his debts had increased, without assigning any reason therefor.

In appellee's testimony we find nothing to aid the case. He merely testified that he had lived economically and had borrowed the money to pay the alimony. Upon this record the circumstance of remarriage seems to stand alone, with no attending results making it a material matter for consideration.

This leaves the general finding that appellant does not require alimony, as supported by the special findings that she lives in the family of her father who is rich and supplies her with the comforts of life. This circumstance also appellant contends should not be considered, for the reason that her father is under no legal obligation to support her. It must be deemed also somewhat weak as a changed condition. The father's wealth and ability to support his daughter must have been known to appellee when, through his attorney, he originally negotiated and agreed to the alimony terms. He does not say that he did not then anticipate that his abandoned wife would be received under her father's roof.

We do not say that this is a circumstance never to be considered in awarding or modifying alimony. It would be harsh to impoverish the husband for the difference between a legal and a moral obligation or willingness of the father to support the wife. But the law's obligation falls on the husband, not on the father, and we know of no reason, except perhaps necessity, to warrant the court in shifting it thus in its entirety.

Undoubtedly the trial court has a large discretion in awarding and subsequently adjusting alimony to changed conditions. Properly and necessarily so. This court should not and will not substitute its own discretion. Its intervention is invoked properly only for abuse of discretion or for the application of erroneous principles.

If we adhere to the doctrine, not challenged by appellee, that the court's function was not to review the original decree for errors of

judgment or discretion, but to modify it to meet changed conditions, we can scarcely give weight to the finding that appellee's mental confusion prevented him from proper precautions to protect his interests, in a suit wherein he was represented by able counsel, and no pertinent existing fact or condition is shown to have been overlooked by any one. Nor can we avoid the conclusion that the present decree or order, not in modification, but in rescission, in so far as it rests upon changed conditions, rests upon conditions not shown by the findings or proof to have been proper matter for consideration.

The order modifying final decree will be reversed. The cause will be remanded, with a direction to dismiss the petition, but without prejudice to further proceedings for modification under the jurisdiction reserved. It is so ordered.

BICKLEY, C. J., and SADLER, J., concur.

HUDSPETH, and NEAL, JJ., did not participate.