66 P.(2d) 260

**MINDLIN v. MINDLIN.**

No. 4198.

Supreme Court of New Mexico.

March 17, 1937.

156

Joseph Gill, of Albuquerque, for appellant.

John F. Simms, of Albuquerque, for appellee.

ZINN, Justice.

On March 7, 1934, Pauline S. Mindlin, the appellant herein, was granted a decree of divorce from her husband, Frank Mindlin, the appellee here. This decree recited that she and her husband had previously made a property settlement which was approved by the court. The question of alimony was not covered or fixed in the property settlement. The court, from the evidence adduced at the divorce hearing, decreed that $60 a month was a suitable allowance and ordered appellee to pay that sum until the further order of the court.

On the 6th of November, 1935, the appellant married one James M. Hill. Appellee, who had at all times complied with the decree by paying the alimony, on December 6, 1935, moved the court to abate the alimony. An order was issued directing the appellant to show cause why the motion should not be granted. She filed a return thereto. She first demurred to the motion, and thereafter set out her marriage to James M. Hill, but stated in the return that on the 12th of December, 1935, she filed a suit for the annulment of her marriage to him on the ground of fraud, or, in the alternative, for a divorce, and made a copy of the complaint in her suit against Mr. Hill a part of the return. Her complaint against Mr. Hill shows that she was led to believe that Hill was worth a large sum of money, the owner of a ranch in Oklahoma valued at $150,000 and that he had been knighted by the King of England for bravery, that he was a graduate of several universities, and she was thereby induced to marry him and did marry him on these representations and those of affection and did live with him for about a month. She discovered that such representations on his part were false and fraudulent, and that he was, in truth and in fact, merely an adventurer.

To her return was also annexed an affidavit of her attorney in the divorce proceeding to the effect that she and her attorney consented to the divorce and the property settlement between the appellant and the appellee when, in truth and in fact, there was no ground for divorce and that the property settlement made at the time of the divorce between appellant and appellee was entirely onesided and unfair to the appellant. At this point we deem it necessary to point out that the decree of divorce was awarded to her on her cross-complaint and her prayer.

At the hearing on the motion to abate alimony, the appellant put her testimony

into the record. As soon as the testimony had proceeded far enough to disclose that its purpose was to reopen all matters settled by the divorce decree and the property settlement, counsel for the appellee objected, and the court ruled that, if the appellant was defrauded in the property settlement, she should not be allowed to go into that matter on the hearing of the appellee's motion to abate alimony, but that she had her remedy by proper action. Appellant's attorney then offered to prove that the $60 a month alimony carried by the decree and omitted in the poperty settlement was part of the consideration for the division of the property, and the court held, over the objection and exception of the appellant, that the property settlement was not before the court on the pending motion. Appellant testified that she is worth about $8,000 and that appellee is worth about $25,000, and that she has no other means of support besides the income from the $8,000 worth of investments and the $60 a month alimony. On cross-examination she admitted that she received $65 a month rent on her house. This house had been put in order by appellee when appellant took it over, and that appellee gave her additional help by way of paying the Home Loan payments on it after the divorce.

She also testified that prior to her marriage to appellee she had secured a divorce in Kansas from another husband and had received about $22,500 from this first husband. Since her divorce from appellee, her second husband, she lost a considerable amount of this money playing the stock market. She and appellee had no children, but she is the sole support of her mother. There is evidence to show that services of counsel in the instant case are worth from $125 to $150.

At the end of appellant's testimony, appellee moved the court for an order sustaining the motion to abate alimony. The trial court sustained the motion to abate the alimony and denied any attorney's fees to appellant, from which judgment this appeal is prosecuted.

Appellant relies upon two points for reversal:

First. The court erred in sustaining the motion to abate on the evidence introduced.

Second. The court erred in refusing to allow attorney's fees to her attorney in resisting the motion to abate.

This brings for our consideration the question of the power of the district courts to abate alimony awarded a wife who remarries.

In the instant case, the original decree of divorce provided as follows:

"(2) That the said cross-defendant Frank Mindlin pay to the cross-complainant Pauline S. Mindlin, the sum of Seven Hundred Twenty ($720.00) Dollars per year, as a suitable allowance for her maintenance and support; that the same be paid in the following manner:

"Sixty ($60.00) on the first day of each calendar month, at the First National Bank in Albuquerque, New Mexico, and that said payment be continued until the further order of this Court."

■ In this decree we find a specific reservation of the right to make further orders in reference to alimony. This is a right we recognized in Lord v. Lord, 37 N.M. 24, 16 P.(2d) 933. The granting of alimony and the fixing of its amount and duration is a matter peculiarly within the discretion of the trial court. In Lord v. Lord, supra, we said:

"The divorce statute (1929 Comp.St. c. 68, art. 5 [sections 68-501 to 68-511]) does not authorize the court to reserve jurisdiction in the matter of alimony, or to decree concerning it otherwise than finally, except during the pendency of the suit. Neither does the Code of Civil Procedure, so far as we are aware, authorize reservation of jurisdiction in any matter or cause. Yet it is familiar practice in equity.

"The statute does not authorize a court to reserve jurisdiction of the custody, maintenance, etc., of the minor children. The statute itself reserves it. Id. § 68-506. The court could not, if it would, divest itself of such continuing jurisdiction. The fact does not argue against the court's power, in its discretion, to reserve jurisdiction in the matter of alimony. It merely shows that the Legislature did not see fit itself to reserve or continue the jurisdiction."

The court in the original decree decided to fix the alimony at $60 a month until his further order, plainly indicating that circumstances might arise to make the award different or to call for its modification.

The 'Supreme Court of Washington, in Ruge v. Ruge, 97 Wash. 51, 165 P. 1063, 1065, L.R.A. 1917F, 721, uses this language:

"In such cases the decree is not final and conclusive as a matter of law, because it does not purport to be final and conclusive as a matter of fact. The reservation in the decree plainly indicates an unfinished determination of the judicial mind; that is, the court has not completely disposed of the case. The power of the court not having been exhausted, it reserves to itself the right to exercise the unexhausted portion of its power in such manner as changed conditions and circumstances may indicate to be just."

See, also, 19 C.J. 270, title, Divorce, and cases there noted.

■ That the court could reopen the case and change the award, either increasing it, diminishing it, or abating it in its entirety, cannot now be questioned.

■ Holding, as we do, that the trial court has the power to abate, we are left only with a determination of whether such power was abused. Cassan v. Cassan, 27 N.M. 256, 199 P. 1010. There are many cases dealing with the question of abating alimony after the remarriage of the wife. The cases are collected in exhaustive notes in 19 C.J. 275, 276, 293, Cropsey v. Cropsey, 104 N.J.Eq. 187, 144 A. 621, 64

A.L.R. 1266-1273, and Myers v. Myers, 62 Utah, 90, 218 P. 123, 30 A.L.R. 74-79. The law seems to be well settled that the marriage of the wife does not of itself abate the alimony due from her former husband, but that some action of the court which ordered the payment of the alimony is necessary to relieve the former husband. However, it is a cogent reason for abating the alimony. We cite from the text in 19 C.J. at page 275, title, Divorce:

"(Sec. 626) (3) Remarriage of Wife. Although the court may have power to modify, in the absence of a mandatory statute to the contrary, a divorced wife's remarriage to another does not necessarily of itself operate as a release of the former husband's obligation to pay alimony, but simply affords a cogent reason for the court to modify or vacate the order. And hence it may well furnish a ground for discharging him from further payments, or for a reduction of the alimony, especially where the wife marries a man who is able to afford her a reasonable support; and the rule applies to a decree based upon and incorporating an agreement between the parties, as well as to one founded on testimony, unless such decree shows that the award was intended to continue during the wife's life. It has been held, however, that such a remarriage does not call for a modification or vacation of an allowance for alimony, where the alimony was awarded in gross or in lieu of a substitute for all the wife's property rights, nor has the general rule been applied to alimony already accrued."

The case we have under consideration here is one in which the court ordered the payment of alimony at the rate of $60 a month "until the further order of the court." In the decree the court recites that all property rights have been settled between the parties and such settlement was approved by the court. The question of alimony was left to the judgment of the court.

In Cohen v. Cohen, 150 Cal. 99-104, 88 P. 267, 270, 11 Ann.Cas. 520, the California court made a very clear statement of what would seem to be the better rule:

"We believe that the cases wherein the alimony should be continued after the remarriage are extremely rare and exceptional, particularly where there are no children of the former marriage. Good public policy would not compel a divorced husband to support his former wife after she has become another man's wife, except under extraordinary conditions, which she should be required to prove. Unless such conditions are shown by her to exist, the court should, on the former husband's motion, cancel all payments accruing after the remarriage, in all cases where, as here, there are no children and the allowance is based solely upon the husband's probable earning capacity, or upon his breach of the marriage vows, and not upon existing property rights."

See, also, Bowman v. Worthington, 24 Ark. 522; Brown v. Brown, 38 Ark. 324;

Casteel v. Casteel, 38 Ark. 477; Erwin v. Erwin, 179 Ark. 192, 14 S.W.(2d) 1100; Tremper v. Tremper, 39 Cal.App. 62, 177 P. 868; Carlton v. Carlton, 87 Fla. 460, 100 So. 745. The cases cited and many others proceed upon the basis that, where the circumstances of a particular case do not show any hardship to the wife, the trial court should consider the situation of the parties and act in accordance with sound appreciation of public policy.

The facts can be faced in the instant case baldly, and from such facts determine whether or not the trial court abused its discretion in the decision appealed from. The record shows that the appellant had received in the settlement of a former marriage the approximate sum of $22,500 in cash and property. That appellant and appellee had lived together as man and wife for about thirteen years, when appellee brought suit for divorce. Appellant cross-complained, and the decree of divorce was awarded her upon her cross-complaint and prayer. With the decree there was adjudged to appellant the sum of $60 per month alimony for her support and maintenance. Prior to the decree there had been a property settlement, which was approved by the court. The husband, appellee, at all times complied with the order of the court, paying the award, and also paid mortgage installments on the home which apparently went to appellant in the property settlement. This place was renting for $65 per month. The appellant had made some bad investments, and her net worth,

exclusive of the house, at the time of the hearing on the motion to abate was only $8,000, which amount was invested in mortgages and stock. The record is silent as to her independent income from these investments. The record is silent as to her age, her physical or mental capacity. The record is silent as to her ability to supplement her income from her investments and the rent money by her own efforts. She has no children to support. She is the sole support of her mother.

Under the above facts, if at the time of the granting of the divorce the trial court had refused to award appellant any alimony, or had awarded her $10 per month instead of the $60, could we, in the face of the record as above recited, rule as a matter of law that the trial court had abused its discretion? Clearly not. We cannot assume that her station in life required an award of any alimony in addition to the property settlement. Coupled with the above facts, we find that since the decree of divorce was granted the appellant had remarried.

The appellant had an undoubted right to marry again. Her complaint against her present husband is based on his false representations made to her before marriage as to his supposed wealth and position. The record is silent as to the wealth or position of appellant's present husband. The record is silent as to the truth of the allegations made by appellant against Hill. He may defend and prove the allegations of appellant to be untrue. He may prove himself

to be a man of wealth, titles, degrees, and the possession of "palaces in England." This being true, it would seem to be most unjust and inequitable for appellant to hold appellee for further payments of alimony.

In New Mexico the husband and wife contract toward each other obligations of mutual respect, fidelity, and support. Comp.St.1929, § 68-101. When the appellant remarried, her new husband thereby contracted toward her the obligation of support. The record is silent as to any failure on the part of Hill to fulfill this solemn obligation. The appellant cannot have her cake and eat it too. In the present state of the record, we cannot say as a matter of law that the trial court erred and abused its discretion by terminating the alimony. The appellant cannot question the power of the trial court to decide the matter, and the right and duty of the trial court to decide it according to what it believed under the circumstances to be just and equitable. This right and power is only subject to review because of abuse of that discretion and power. We find no abuse and must permit its ruling to stand.

As to the appellant's claim that the trial court erred in refusing an allowance for attorney's fees, we are of the same mind. The trial court had the power to force the appellee to pay an attorney's fee for the wife's lawyer had she not been able to have her cause presented. In Lord v. Lord, supra, that question was discussed. Where, as in this case, the wife has independent means of her own, and the court did not make an allowance for attorney's fees, we cannot hold as a matter of law that it is an abuse of the discretion of the trial judge to deny appellant's attorney a fee to be paid by appellee.

Finding no error, the judgment of the district court will be affirmed. It is so ordered.

HUDSPETH C. J., and SADLER, BICKLEY, and BRICE, JJ., concur.