Laurence J. Ellert, aka L. J. Ellert v. Commissioner.
Ellert v. Commissioner
Docket No. 78270.
United States Tax Court
T.C. Memo 1961-79; 1961 Tax Ct. Memo LEXIS 271; 20 T.C.M. (CCH) 364; T.C.M. (RIA) 61079; March 22, 1961
Alexander R. Roman, Esq., 3436 Lorin Ave., Cleveland, Ohio, for the petitioner. Buckley D. Sowards, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: A deficiency of $526.86 for the year 1956 is contested by petitioner. *272 The sole question is whether $2,700 paid by him to his former wife was deductible as alimony for that year. Other issues raised in the petition have been conceded by petitioner. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found. Petitioner filed his Federal income tax return for the year 1956 with the district director of internal revenue at Baltimore, Maryland. Petitioner and Margaret McKeever Ellert were married on or about October 24, 1936. The issue of said marriage were Laurence Bernard Ellert, born on or about March 1, 1938; Suzanne Marie Ellert, born on or about May 9, 1939; and Margaret Elissa Ellert, born on or about September 22, 1943. As a result of a pending divorce action, and after a motion on April 5, 1954, counsel representing the respective parties exchanged a letter reading: Confirming the results of our appearance before Judge D. A. Cook on Monday, April 5, 1954 at 11:00 a.m. It is our understanding that: 1. The Plaintiff will continue to pay for the Defendant and his children the same amount as hereto, namely, $296.00 per month, including the allotment. * * *
A separation agreement was entered *273 into on June 30, 1955 between petitioner and Margaret McKeever Ellert, providing in part: 4. Husband is to pay to the wife as and for temporary and permanent alimony, the sum of $22,475.00 in installments, and for support of the minor children, the following aggregate amounts on the following dates, on the 1st day of each and every month: (a) From on or about July 1, 1955 to March 1, 1957 - $375.00 per month of which $150.00 will be allocated as and for the support and maintenance of their three minor children; (b) From March 1, 1957 to March 1, 1959 - $325.00 per month of which $150.00 will be allocated as and for the support and maintenance of their three minor children; (c) From March 1, 1959 to June 1, 1960 - $325.00 per month of which $100.00 will be allocated as and for the support and maintenance of their two minor children; (d) June 1, 1960 to September 22, 1964 - $250.00 per month of which $50.00 will be allocated to the support of their minor child. The amounts set forth above and the dates when said amounts shall be due shall not in any manner be reduced or in any way be affected by either the emancipation, marriage or death of any of the children of the parties *274 to this Agreement except on the dates when each respective child attains his or her majority. Petitioner, under the agreement entered into June 30, 1955, was to maintain life insurance policies in the amount of $22,500, with the wife as beneficiary and the children as contingent beneficiaries until the end of September 1964, the month of the last specified payment. The agreement entered into on June 30, 1955 was incorporated into and made a part of the divorce decree filed August 1, 1955. No decree was ever entered awarding temporary alimony or support to Margaret McKeever Ellert prior to the divorce. No ruling was ever obtained from the Commissioner of Internal Revenue concerning the separation agreement entered into between petitioner and Margaret McKeever Ellert on June 30, 1955. On his return for the year 1956, petitioner claimed a deduction for alimony in the amount of $2,700, identified as follows: "Alimony to ex-wife, M. F. Ellert, 1808 North N. St., Lake Worth, Fla. $2700.00." It is stipulated: That the taxpayer herein withdraws his objections to the Commissioner disallowing a deduction from gross income in the amount of $108.35 claimed as a deduction by the taxpayer *275 in his return for entertainment, as well as disallowing a deduction from gross income for the tax year ending December 31, 1956, in the sum of $81.00 claimed as a deduction by the taxpayer for professional society dues. Opinion Disposition of the present controversy appears to involve almost entirely the local law of the State of Ohio where petitioner's divorce was granted. Specifically, the question is, even though the separation agreement and the divorce decree incorporating it speak in terms of a single lump sum and "installment payments" to discharge it, and even though by its terms the final payment was due in less than 10 years, thus apparently conforming to the provisions [1] of section 71(c)(1), I.R.C. 1954, whether the conditions governing the payments are such as to make them contingent, and hence "periodic" within the terms of respondent's regulations. [2] If so, the payments being includible in the wife's income, the deduction asked by petitioner might be permissible. Sec. 215, I.R.C. 1954. *276 In spite of the absence of conditions expressed in the documents themselves, the contention is that under Ohio law the remarriage of the wife would automatically terminate [3] the alimony though not the support payments for the children. Respondent, however, insists that the rule applies only where the alimony is payable over an indefinite future period, and that subsequent Ohio authority has made this clear. Dailey v. Dailey, 171 Ohio St. 133, 167 N.E. 2d 906 (1960). Petitioner has not replied to this contention, and we think respondent has correctly analyzed the Ohio law. In Dailey v. Dailey, supra, the separation agreement called for the husband to pay to the wife "as alimony, the sum of twenty-five thousand ($25,000) dollars within five (5) days * * * and in addition thereto * * * the sum of twenty thousand ($20,000) dollars, not later than February 1, 1952, and in addition thereto, to pay to the wife the sum of ten thousand ($10,000) dollars each succeeding month of January for the next eleven (11) consecutive years." The Court said (pp. 907-908): In the Hunt case, the payments were indefinite, and the syllabus clearly limits the decision to those cases of indefinite *277 awards of alimony which have no fixed terminal dates. * * *
[The] conclusion is inescapable that the monetary provisions in paragraph two of the agreement are a part of an overall property settlement between the parties, and the provision for payment thereof over a period of years exceeding ten was an obvious attempt to avail of such benefits as may have been obtainable under the then existing regulations of the Department of Internal Revenue. We think it equally clear that the present separation agreement and decree, calling as they do for a total sum to be paid, would not, under the Ohio law as expounded in the foregoing authority, *278 be subject to change by reason of the wife's remarriage. A similar, though in some respects converse, situation to that presented in the Dailey case would in fact appear to exist here. Petitioner says in his brief: "Certainly, if the parties would have thought otherwise, it would have been of no consequence to permit the separation agreement to continue in effect for an additional nine months so that the payments as made would continue for more than ten years to qualify under the installment payment ruling." But we are dealing here with reciprocal provisions of the tax law which make one party to the marital dispute taxable if the other is not. The meticulous craftsmanship of the agreement now in controversy would seem to indicate that counsel for the wife was well aware that if the installment payments continued for more than 10 years, the wife and not the husband would be required to bear the burden of the tax. Alertness to the income tax consequences is also indicated by the care with which the amounts attributable to support of the children are specified and not left to allocation or conjecture. We conclude that the intention of the parties, as clarified by the applicable Ohio *279 law, calls for interpretation of the agreement and decree as involving only a lump sum payable in installments over a period of less than 10 years and not periodic payments. Petitioner contends in the alternative that the temporary payments made prior to the execution of the separation agreement and the entry of the decree may be added to the installment payments so as to produce a period exceeding 10 years. We regard this contention as likewise untenable. During the year in issue the only amounts paid by petitioner were required to be paid by the agreement and the decree of June 30 and August 1, 1955, respectively. They were not made under pendente lite arrangements and, within the express language of the statute, were installment payments "discharging a part of an obligation the principal sum of which is * * * specified in the decree * * * or agreement." Sec. 71(c)(1), I.R.C. 1954, supra. As such, they are not deductible by the husband. Decision will be entered for the respondent. Footnotes
1. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments * * *
(c) Principal Sum Paid in Installments. - (1) General Rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where Period for Payment is More Than 10 Years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received. ↩
2. Income Tax Regs. Sec. 1.71-1. Alimony and Separate Maintenance Payments; Income to Wife or Former Wife. - * * *
(d) Periodic and installment payments. - (1) In general, installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement are not considered "periodic payments" and therefore are not to be included under section 71(a) in the wife's income. * * *
(3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments, discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. (ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether - (a) The contingencies described in subdivision (i)(a) are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or * * *↩
3. "To paraphrase Justice Zinn in the Mindlin case [Mindlin v. Mindlin, 41 N.M. 155, 66 P. 2d 260 (1937)], the trial court is not helpless before the spectacle of a woman having her cake and eating it too; rather the trial court is empowered to determine how much if any cake the former husband ought to be required to furnish subsequent to her remarriage. A contrary decision would result in what might well be described as: quasi-polygamy by court order." Hunt v. Hunt, 169 Ohio St. 276, 288, 159 N.E. 2d 430↩ (1959).