292 P.2d 115
William F. KUERT, Appellant,
v.
Florence KUERT, Appellee.
No. 5973.

Supreme Court of New Mexico.
Jan. 3, 1956.

---

Carpenter, Eaton & Phelps, Roswell, for appellant.

Frazier, Cusack & Snead, Roswell, for appellee.

KIKER, Justice.

Two questions are framed by this appeal the first of which is one of first impression in this jurisdiction. 1.) Does the trial court have the power retroactively to abate accrued alimony payments from the date of the wife's remarriage? 2.) If the first question be answered in the affirmative, did the trial court's failure to abate the alimony payments accruing subsequent to the wife's remarriage constitute error in the instant situation?

The facts pertinent to this appeal may be summarized as follows: The parties were divorced by the District Court of Chaves County by its decree of November 19, 1951, which ordered plaintiff, husband, to pay $150 per month support money to defendant, wife, "until the further order of this Court." On July 7, 1953, defendant became the legal wife of one Frank Miller. Plaintiff made alimony payments in accordance with the order of the divorcing court until August 4, 1953, approximately one month after defendant's remarriage. On May 18, 1954, plaintiff filed a motion to modify the divorce decree with respect to the support payments by reason of defendant's remarriage. The action was tried below upon stipulated facts and issues; no testimony was received. The trial court made findings of fact and conclusions of law and entered judgment relieving plaintiff of alimony payments from the date of the filing of his motion to modify, but requiring plaintiff to pay defendant $1,350 in alimony accrued subsequent to defendant's remarriage and prior to plaintiff's motion for modification.

The question of the power of a court retrospectively to modify alimony provisions has been frequently adjudicated in other jurisdictions; see the exhaustive annotation at 6 A.L.R.2d 1278. Examination

of these cases reveals the achievement of contrary results as between different states and in some instances apparently contradictory decisions on certain aspects of the question within the same jurisdiction. Classification of the factors involved in the decisions with reference to their effect on the result reached proves unrewarding. Statutes whose wording is materially the same have been said in one jurisdiction to grant the power retrospectively to modify alimony and in another to withhold it; there appear to be no words of art which consistently are held to affirm or deny such power. A decision that the power of the court to modify alimony is inherent in the court rather than derived from statute does not achieve uniform results. Reservation of jurisdiction in the decree of the divorcing court is another factor which proves useless as a guide appearing, as it does, in decisions which reach varying results. In some of the jurisdictions which deny the court's power to modify accrued alimony, the court may, for equitable reasons, refuse to enforce the payment of such arrears; other exceptions to their own rule have become established in certain of these jurisdictions. The question has received attention from the authors of bar review articles and texts; see, for example: 40 Georgetown Law Journal 335; 4 Utah Law Review 280; 38 Virginia Law Review 106; 26 North Dakota Bar Briefs 308; 6 Maryland Law Review 238; 2 Nelson on Divorce and Annulment (2d Ed.) 420. The "better rule" is thought by one of these writers to be that a court does not have the power retroactively to modify alimony provisions, and by another, that the court does have such powers; much of the area between these two extreme boundaries of opinion is staked out by other authors. Study of the case law from sister jurisdictions and the legal literature on the subject leads to the conclusion that these cases have turned on social and policy considerations rather than on a traditional construction of the statutes involved; a review of these considerations is, therefore, indicated.

There is general agreement that alimony is not ordered as a punishment imposed upon an erring spouse, but regardless of wrong in order that divorced persons shall "not become public charges or derelicts" 6 Law and Contemporary Problems 250, 251. Those opposing power in the courts retroactively to modify alimony have suggested the following considerations: A wife dependent for her support on alimony ought to be protected in her reliance thereon. Should she have obtained credit on the basis of accrued alimony she should not be prejudiced by her husband's failure, circumstances having changed, to make timely application for modification. Even the divorced wife's psychological reliance on accrued payments reflected in her personal plans has been suggested as a con-

dition perhaps worthy of protection. If the payments are not final upon accrual the husband may deliberately default in the hope that the court will let him off easily, while the wife will tend to litigate every installment as it falls due, whereas she might otherwise give him a period of grace beneficial to both parties. It is frequently said that in view of the increasing mobility of the people of this nation an alimony decree which does not require enforcement beyond the borders of the divorcing state is of little value; this may be termed the "Sistare Argument" and will be considered later.

Those courts and authors of legal literature which favor the existence of power in the courts retrospectively to modify alimony awards have discussed the following points: The very nature of alimony demands that it be modifiable, not only prospectively but retroactively or we " * * * [defeat[s] the rule that the maintenance afforded the separated wife through alimony is not to be greater than what she would have enjoyed in cohabitation." Winkel v. Winkel, 1940, 178 Md. 489, 500, 15 A. 2d 914, 919; see, also, 2 Vernier, American Family Laws 274, 275 (1932). The decisions in cases involving the remarriage of the divorced wife have made declarations along the following lines: The divorced wife's remarriage gives rise to the inference that she has elected to receive support from her new husband and has chosen to abandon the provision for her support in the alimony award. The remarriage of the wife may be deliberately secret or circumstances may make unlikely or near impossible the former husband's learning of the remarriage, therefore it is unreasonable to demand that he move, immediately upon such remarriage, for a modification of the alimony award. Many laymen believe that the remarriage will of itself end the duty of support without further action on his part, and, as Chief Justice Washington noted in his dissent in Kephart v. Kephart, 1951, 89 U.S.App.D.C. 373, 193 F.2d 677, 690 "not all divorced husbands are lawyers." These courts have declared, with considerable asperity, that the circumstances ought to be unusual indeed if the law is to require the ex-husband to join the current husband in the support of one woman.

Excepting, for the moment, the "Sistare Argument" it is clear that the social and policy considerations outlined above as representative of those expressed by courts and writers denying the power of the courts retrospectively to amend alimony awards are amenable to consideration and susceptible to enforcement by a court which *has* such power. A determination that our courts have such power and thus possess a power flexible enough to afford justice in the multitude of fact situations presented may be said fairly to mean that "individual justice is substituted for what could be

standardized hardship." 1954 Wisconsin Law Review, 522, 524.

This being true, why has there not been universal adoption of the rule that the courts do have the power retrospectively to modify alimony awards? The answer is: the "Sistare Argument." This argument may be stated: Installments of alimony either vest when they fall due or they do not. If they vest then they may not later be divested. It is necessary to hold that such payments do vest as they accrue if the order for payments of alimony is to be treated as a final judgment in respect to such installments to which a sister state is required to give full faith and credit under Sistare v. Sistare, 1909, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905.

In the Sistare decision, 218 U.S. at pages 16 and 17, 30 S.Ct. at page 686 the court said:

" * * * generally speaking, where a decree is rendered for alimony and is made payable in future instalments, the right to such instalments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the instalments, since, as declared in the Barber Case, 'alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is.' * * * This general rule, however, does not obtain where, by the law of the state in which a judgment for future alimony is rendered, the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the instalments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the instalments becoming due."

At page 22 of 218 U.S., at page 688 of 30 S.Ct., the court declared that:

" * * * every reasonable implication must be resorted to against the existence of such power, in the absence of clear language manifesting an intention to confer it."

Thus the Sistare decision promulgates a test to determine whether full faith and credit must be given to a sister state's alimony order, which rests on an inquiry as to the power of the divorcing state's courts and a determination of the finality of the alimony order. Further, it enunciates a rule of construction to the effect that unless a statute or decree of the divorcing state specifically reserves the power to annul or modify the order every reasonable implication against the existence of such power is to be indulged.

The Sistare case has been criticized; see, 4 South Carolina Law Quarterly 341, and 6 A.L.R.2d 1277, 1289–1290. Recent expressions by four members of the United States Supreme Court seem to indicate a trend to require full faith and credit to judicial proceedings "without limitation as to finality"; see the special concurrence of Mr. Justice Jackson in Barber v. Barber, 1944, 323 U.S. 77, 87, 65 S.Ct. 137, 141, 89 L.Ed. 82; see the dissenting opinion by Mr. Justice Rutledge in which Mr. Justice Black joins in Griffin v. Griffin, 327 U.S. 220, 236 et seq., 66 S.Ct. 556, 90 L.Ed. 635, as well as the dissent by Mr. Justice Frankfurter in that decision at page 248 of 327 U.S., at page 569 of 66 S.Ct. The United States Supreme Court has, however, approved the decision; see Yarborough v. Yarborough, 1933, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269 and Barber v. Barber, cited supra, and it remains today the law.

The Sistare decision has doubtless been the decisive factor in causing at least twenty-three jurisdictions to deny their courts the power of retroactive modification of alimony awards. (It is illuminating to note, however, that these courts are frequently faced with equitable circumstances of such force as to require them to breach this rule; see, for example, McHan v. McHan, 1938, 59 Idaho 496, 84 P.2d 984. At least sixteen jurisdictions have held that their courts possess the power of retrospective modification despite the Sistare decision, including New York state, whose statute was construed in that case.

The more enlightened decisions from other jurisdictions have for some years recognized that the Sistare decision sets but the *minimum* standard which will *require* full faith and credit of a sister state. This view has found its chief expression in two distinct but allied lines of cases.

One: those decisions which establish a foreign alimony decree as a local decree and clothe it with all the equitable remedies of a local decree, thus making enforceable payments which have *not* accrued. See Fanchier v. Gammill, 1927, 148 Miss. 723, 114 So. 813; Ostrander v. Ostrander, 1934, 190 Minn. 547, 252 N.W. 449; Johnson v. Johnson, 1940, 194 S.C. 115, 8 S.E.2d 351; and see the discussion of this trend in 4 South Carolina Law Quarterly 341, 353–361; see, also, the annotation in 132 A.L.R. 1272.

Two: those decisions which permit enforcement of a foreign alimony decree as to accrued installments though the divorcing state has the power of retroactive modification as to these due installments. See Holton v. Holton, 1922, 153 Minn. 346, 190 N. W. 542, 41 A.L.R. 1415; see, also, the collected cases and discussion thereof in 132 A.L.R. 1272.

Thus the "Sistare Argument"—in our opinion the only valid argument opposing the existence of power in the courts retrospectively to modify alimony decrees—ap-

438

pears far less persuasive today than it did to the authors of the early opinions which adhered strictly to its letter.

Adoption of a rule that the courts of this state do not have the power retroactively to modify or annul accrued alimony from the date of the remarriage of the divorced wife is clearly not mandatory, nor do we think it desirable. The opposite view, that remarriage of the wife automatically terminates alimony payments with no discretion in the trial court, is embodied in the statutes of some states as construed; see, 6 A.L.R.2d 1278 at pages 1300–1302. We think the adoption of this rule would be as unwise as the adoption of its opposite, as an unnecessary restriction upon the exercise of the trial court's sound discretion which is essential to an equitable disposition of the multitude of factual situations coming before it.

We prefer what might be termed the middle ground. In Mindlin v. Mindlin, 1937, 41 N.M. 155, 66 P.2d 260, 263, we held that though the remarriage of the wife is a cogent reason for modifying alimony which the former husband has been ordered to pay, such remarriage does not cause an automatic abatement but the former husband must apply for modification; in that case, which was written prior to the 1943 amendment of what is now § 22–7–6 N.M.S.A. 1953, we made clear that there was no question but that the courts had the power prospectively to modify an alimony award; we

further stated that this was a matter which rested in the trial court's sound discretion. Justice Zinn, writing for the Court, gave indication in the Mindlin decision of our view of the instant case when he included the following statement, which was dictum there, but which we now adopt as the basis for our rule:

"In Cohen v. Cohen, 150 Cal. 99–104, 88 P. 267, 270, 11 Ann.Cas. 520, the California court made a very clear statement of what would seem to be the better rule:

" 'We believe that the cases wherein the alimony should be continued after the remarriage are extremely rare and exceptional * * *. Good public policy would not compel a divorced husband to support his former wife after she has become another man's wife, except under extraordinary conditions, which she should be required to prove. Unless such conditions are shown by her to exist, the court should, on the former husband's motion, cancel all payments accruing after the remarriage * *.' "

(It should be noted that the Cohen case, cited approvingly in our Mindlin opinion, held that the trial court should have canceled alimony as of the date the wife remarried rather than as of the date of the husband's application for modification, and this despite the general rule in California that the courts lack power retroactively to modify alimony. The doctrine of the Cohen

case was followed in Atlass v. Atlass, 1931, 112 Cal.App. 514, 297 P. 53. The California statute was amended in 1933 relieving the husband of the obligation to support his divorced wife upon her remarriage; Statutes 1933, c. 412, p. 1039, § 1, West's Ann.Civ.Code Cal. § 139.)

· We proceed to construe our statute, § 22–7÷6, N.M.S.A.1953. Emphasizing that the alimony ordered in the instant case is not involved in the support of children of the marriage, is not tied up with a division of the property rights of the divorced couple and is not a lump sum award made payable in installments, but is purely an order to pay current support money—we announce our rule thus:

█ On the application of the divorced husband to abate support payments to the divorced wife on the ground of her remarriage such application should be granted as of the date of her remarriage unless she proves extraordinary conditions justifying continuance of the former husband's duty to support his former wife after she has become the wife of another man, and the evaluation and effect to be given these conditions rests in the sound discretion of the trial court.

We think this rule sound as considered in the light of the rule of construction and the test to determine whether full faith and credit is required as set out in the Sistare decision. The instant case is restricted to the situation of the former wife's remarriage. Absent that factor we have expressed no opinion as to the powers of the courts of this state retrospectively to modify alimony. Thus, if the remarriage of the former wife does not appear our alimony decrees should, under the Sistare decision, merit full faith and credit in sister states. As has already been noted, in some jurisdictions our alimony decrees would find enforcement on the basis of comity rather than full faith and credit. And if, in some jurisdictions, neither of the above views should obtain it is always open to the wife, despite possible expense and difficulty in obtaining service, to reduce accrued alimony payments to a money judgment in this state which will require full faith and credit in every jurisdiction.

█ We think, further, that the rule which we have announced is consistent with the dictum in our Mindlin decision, with our holdings in other cases, in this field, with sound public policy and plain common sense. When the wife contracts a subsequent marriage with another, thus creating under §. 57–2–1 N.M.S.A.1953 a duty of support in him, good public policy does not demand that she continue to receive support from her first husband unless she prove exceptional circumstances. The purpose of alimony is to provide support for the former wife, Lord v. Lord, 37 N.M. 454, 455, 24 P.2d 292. When the purpose fails

440

so should the right. Proof of his former wife's remarriage establishes the divorced husband's prima facie case for modification of alimony payments coming due subsequent to such remarriage. To paraphrase Justice Zinn in the Mindlin case, the trial court is not helpless before the spectacle of a woman having her cake and eating it too; rather the trial court is empowered to determine how much if any cake the former husband ought to be required to furnish subsequent to her remarriage. A contrary decision would result in what might well be described as: quasi-polygamy by court order.

We turn now to a consideration of the second question: Did the trial court's failure to abate the alimony payments accruing subsequent to the defendant's remarriage constitute error under the facts presented in the instant case?

■ The findings of fact, conclusions of law and judgment of the trial court do not indicate unequivocally whether this part of the judgment was made in the exercise of the trial court's discretion or because the trial court thought itself without power retroactively to abate alimony. The general rule would be for us to presume that the trial court had exercised its discretion; 5 C.J.S., Appeal and Error, § 1585, p. 477. The record as a whole indicates, however, that the trial court did not exercise its discretion, erroneously believing that it had none. (Such, in fact, was defendant's af-firmative defense). We need not, therefore, and will not, give force to the usual presumption. Gerry v. Neugebauer, 1927, 83 N.H. 23, 136 A. 751, 753; Delisle v. Smalley, 1949, 96 N.H. 58, 69 A.2d 868, 870.

■ The instant case was tried below on stipulated facts thus making applicable the rule of Newbold v. Florance, 1952, 56 N.M. 284, 288, 243 P.2d 597, that when all the material evidence is documentary we are in as good position as the trial court to pass upon the facts. Defendant admits her remarriage. No facts appear in this case which can be termed proof of such exceptional circumstances as would justify a continuance of the plaintiff's duty to support the defendant subsequent to her remarriage. We are, therefore, able to say as a matter of law that the trial court erred in those portions of its findings, conclusions and judgment which pertain to an award to the defendant of $1,350 in alimony accruing subsequent to defendant's remarriage.

The case is reversed and remanded with directions to the district court to enter judgment disallowing the unpaid alimony from the date of the defendant's remarriage.

It is so ordered.

COMPTON, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.