485 P.2d 735

**Patricia L. CHAVEZ, Plaintiff-Appellee,**

v.

**Paul R. CHAVEZ, Defendant-Appellant.**

**No. 9126.**

Supreme Court of New Mexico.

May 28, 1971.

Ussery, Burciaga & Parrish, Albuquerque, for defendant-appellant.

Ramon Lopez, Albuquerque, for plaintiff-appellee.

## OPINION

STEPHENSON, Justice.

Defendant-appellant (Husband) appeals from an order reinstating plaintiff-appellee's (Wife) alimony from the date of the purported annulment of a subsequent marriage. We reverse.

The parties were formerly husband and wife. During the pendency of divorce proceedings, they entered into a contract settling their differences. The contract dealt with the usual subjects—division of community property and debts, recognition of separate property, custody and support of the children and the like. Further, Husband agreed to pay Wife " * * * $70.00 per month as and for alimony for her lifetime except that in the event of her remarriage said payments shall cease."

The contract was presented to the court for its approval and by its final decree entered in February, 1968, the court made the essential findings regarding it, the contract

was attached as an exhibit, and in the decretal portion was approved and confirmed. The decree was not appealed and became in all respects final.

Following a brief courtship and a ceremony vaguely recalled, on October 26, 1968, Wife married one Roul King. Husband ceased paying alimony from the time of the nuptials, although no order authorizing cessation was entered. The marriage was consummated, but being beset with problems, Wife consulted counsel and inquired as to whether her alimony could be reinstated if the second marriage were to be annulled. On January 10, 1969, Wife filed suit against Mr. King, alleging that he had " * * * represented himself to be a conscientious and dependable person, that he had $11,000 in a bank, that he was employed and would provide for, maintain and support" Wife, but that these representations were untrue. She prayed that the marriage be declared null and void. A decree was entered by default so declaring on March 21, 1969.

On April 30, 1969, Wife filed a petition which simply alleged the provisions of the decree vis-a-vis alimony, the marriage to Mr. King and the annulment thereof, and that she was " * * * entitled to have her rights to alimony in the * * * final decree reinstated."

The court below made findings of fact as to the decree, the subsequent marriage and the annulment. It further found that Husband had refused to pay alimony since the annulment (which was not alleged though undisputed) and that Husband was financially able to pay alimony (which was neither alleged nor supported by any evidence). It concluded that Wife was entitled to alimony " * * * as the marriage to Roul King was void ab initio." An order was entered by which alimony was "reinstated" commencing the day following the annulment decree. This appeal followed.

 Husband has consistently asserted that the annulment was void. Validity of the annulment is implicit in the court's de-

cision. The annulment proceedings appear doubtful, but we need not pass upon their validity. The annulment was supposedly predicated upon fraud, and therefore the court's conclusion that the second marriage was void *ab initio* is in error. Flaxman v. Flaxman, 57 N.J. 458, 273 A.2d 567 (1971); 52 Am.Jur.2d "Marriage" § 30. Even granting an aura of validity to the annulment proceedings, the marriage was no worse than voidable.

 Alimony is the support which a court decrees in favor of a wife as a substitute for, and in lieu of, the common law or statutory right to marital support during coverture. In New Mexico, men are not legally obliged to support the wives of others, and instances in which alimony should be continued after remarriage have been characterized as being " * * * extremely rare and exceptional." Mindlin v. Mindlin, 41 N.M. 155, 66 P.2d 260 (1937). Wife has the burden of proving some extraordinary condition. Kuert v. Kuert, 60 N.M. 432, 292 P.2d 115 (1956); Mindlin v. Mindlin, supra.

Both Mindlin and Kuert indicate, probably in deference to form and policy, that a husband should make application to the court to be relieved of the payments, which was not done in this case. That issue is not presented to us, since Wife makes no complaint of the cessation of alimony, but rather seeks "reinstatement," the relief granted by the trial court. The case was presented and disposed of upon the theory that the cessation was proper.

It is clear that this is not a case in which a wife seeks modification of a decree based upon altered personal, family or economic circumstances. To the contrary, she seeks "reinstatement" of the alimony provisions of the decree in its original form. There were no allegations of any changed circumstances in this sense, nor any modification of the decree sought.

The sole issue is whether, under the circumstances of this case, the purported annulment revived Husband's obligation to pay alimony. In resolving this issue, we

are concerned with alimony only, unadulterated by other troublesome features such as arise where periodic payments are in lieu of a property award or are in consideration of a property settlement agreement or constitute a lump sum award payable in installments or include sums for the support of minor children.

The revival of alimony following annulment of a remarriage has been considered in a number of cases with various results predicated upon differing rationales. See Annot., 48 A.L.R.2d 270, 296 (1956) and 48 A.L.R.2d 318, 329 (1956).

We prefer the straightforward approach taken by the court in Flaxman v. Flaxman, supra, the facts of which were almost identical to the case at bar.

In Flaxman, in conjunction with a scholarly review of the authorities, the court, in holding that alimony was not revived, pointed out that the first husband is entitled to rely on the wife's remarriage and reorder his personal and financial affairs accordingly. Otherwise a husband whose wife has remarried could never be certain that financial support for his former wife would not shift back to him. His affairs would be in limbo. By the same token, the remarried wife has the option of seeking annulment or divorce (and alimony) from the second husband. If annulment revived alimony from the first husband, she would be in a position to choose between two sources of support. She ought not have this control, the vicissitudes of the second marriage not being attributable to the first husband.

■ We are led to the same result by the terms of the final decree. The rules to be followed in arriving at the meaning of judgments and decrees are not dissimilar from those relating to other written documents. Where the decree is clear and unambiguous, neither pleadings, findings nor matters dehors the record may be used to change its meaning or even to construe it. "It must stand and be enforced as it speaks." Hollingsworth v. Hicks, 57 N.M. 336, 258 P.2d 724 (1953). See also Chron-

ister v. State Farm Mutual Automobile Ins. Co., 72 N.M. 159, 381 P.2d 673 (1963); Dunham v. Stitzberg, 53 N.M. 81, 201 P.2d 1000 (1948).

■ To us, the provisions of the decree concerning alimony seem perfectly clear and unambiguous, providing, as they do, that " * * * in the event of her remarriage said payments shall cease." By the decree, cessation of alimony did not turn on the status of the remarriage as being valid. It simply provided that in a certain event, alimony would cease; the event occurred and the alimony ceased.

The trial court is directed to set aside its order and enter judgment in favor of Husband.

It is so ordered.

COMPTON, C. J., and TACKETT, J., concur.