In re Roger E. DIRKS, Debtor.

Esperanza G. DIRKS, Plaintiff,

v.

Roger E. DIRKS, Defendant.

Bankruptcy No. 81–00006 M A.
Adv. No. 81–0495.

United States Bankruptcy Court,
D. New Mexico.

Dec. 4, 1981.

James C. Ellis, Albuquerque, N. M., for plaintiff.

Daniel J. Behles, Albuquerque, N. M., for defendant.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

### PROCEEDINGS

This matter is before the Court upon the complaint of Esperanza G. Dirks, the ex-wife of the defendant debtor, seeking to have the Court declare that certain debts ordered paid by the debtor in a prior divorce proceeding are nondischargeable. Counsel for plaintiff argues that the final decree of dissolution of marriage entered by the state district court is ambiguous, and therefore that this Court has the right and duty to look behind the terms of said final decree to determine that payments on the debts set forth were in fact ordered to be paid in lieu of alimony and that having once so found, the Court should find that the debts to Rio Grande Valley Bank, Cessna Aircraft, First National Bank, Harold Dirks, Frank Skarritt, MasterCharge and VISA should be declared nondischargeable. Defendant argues that the decree is not ambiguous, and even if it were, that the Court should find said debts to be dischargeable in the bankruptcy proceeding.

### DISCUSSION

Three determinations must be made in this matter. The first is whether this Court has jurisdiction to interpret the terms of a divorce decree. The second is what standard will be used to determine if a debt ordered paid by a state court is in fact alimony. The third is, once having made that determination, if this Court should find such debts to be nondischargeable.

It is obvious that with the continuing volume of filings both in this and other districts, this question will arise again and again. Indeed, from a review of the cases reported, it seems to have frequently arisen in the past.

Mr. and Mrs. Dirks were divorced by final decree entered in the state district court on February 7, 1980. That decree provides, in pertinent part, as follows:

"IV.

That the community property and the community obligations of the parties should be divided as hereinafter set forth.

V.

That each party should bear their own attorney's fees and costs.

VI.

That Petitioner should pay to Respondent child support for the support, maintenance and education of the parties' minor children according to the child support guidelines of this District based upon a net take-home pay presently in the amount of $22,000.00 to $24,000.00 annually.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. That Petitioner be and he hereby is awarded an absolute divorce from Respondent on the grounds of incompatibility.

2. That the care, custody and control of the parties' three minor children be and the same hereby is awarded to Respondent; that Petitioner be and he hereby is given reasonable rights of visitation with the said three minor children.

3. That Petitioner be and he hereby is ordered to pay child support to Respondent for the support, maintenance and education of the parties' three minor children, commencing in February, 1980,

monthly the sum of $703.00 ($380.00 monthly for Ricky, $190.00 monthly for Kristi, and $133.00 monthly for Steven).

4. That as her sole and separate property Respondent be and she hereby is awarded the following property:

   a. Her clothing and personal effects.

   b. The real property and residence of the parties located at 3521 Chelwood, N.E., Albuquerque, New Mexico.

   c. The household goods, furniture and fixtures located in said residence.

   d. The 1973 Pontiac automobile.

   e. All retirement and pension benefits presently owned by Respondent in connection with her employment.

   f. All life insurance policies owned by Respondent.

5. The award to Respondent of the said real property and residence and the household goods, furniture and fixtures is in lieu of any alimony which might otherwise be owing or payable by Petitioner to Respondent.

6. That Petitioner be and he hereby is awarded as his sole and separate property:

   a. All stock and ownership interest of whatsoever kind in and to the company known as Flite Services, Inc., a New Mexico corporation.

   b. The 1968 Pontiac automobile.

   c. His clothing and personal effects.

   d. All retirement and pension benefits owned by Petitioner by virtue of his employment.

   e. All life insurance policies owned by Petitioner.

7. Petitioner be and he hereby is ordered to assume and pay as his sole and separate obligation the following community debts:

   a. The indebtedness to Rio Grande Valley Bank in the approximate amount of $22,000.00.

   b. The indebtedness to Cessna Aircraft in the approximate amount of $18,000.00.

   c. The indebtedness to First National Bank in the approximate amount of $6,000.00.

   d. The indebtedness to Harold Dirks in the approximate amount of $20,000.00.

   e. The indebtedness to Frank Skarritt in the approximate amount of $6,000.00.

   f. The indebtedness to Master Charge in the approximate amount of $3,600.00.

   g. The indebtedness to VISA in the approximate amount of $2,800.00.

All indebtedness incurred by either party from and after the date of the entry of this Final Decree shall be the sole and separate obligation of the party incurring the same.

8. The parties may present to the Court within ten (10) days from the date of this Final Decree a list of other community indebtedness and this Court will at such time make a determination as to the division of any such indebtedness between the parties. The Court will retain jurisdiction over this cause of action for the purpose of making such division in the event the parties apply therefore within said time limit. In the event the parties fail to make application for such division within the said time limit, all such indebtedness shall be the sole and separate obligation of the party incurring the same.

9. Each party shall be awarded as his or her sole and separate property all checking and savings accounts owned by either party.

10. Respondent be and she hereby is ordered to assume and pay as her sole and separate obligation the mortgage existing between the parties' real property with Sandia Savings and Loan."

■ Although the Bankruptcy Act of 1978 greatly expanded the jurisdiction of this Court, there seems to be no argument that jurisdiction over such matters as marriage, divorce, child custody, alimony and child support, remain, as it has always been, in state courts. The United States Supreme Court has held that there is no federal domestic relations law. *De La Roma v. De La Roma*, 201 U.S. 303, 307, 26 S.Ct. 485,

486, 50 L.Ed. 765 (1906). There certainly seems to be no grant of jurisdiction to this Court to hear such matters, even in conjunction with the pending bankruptcy proceeding of one or both parties to such an action. 28 U.S.C. Section 1471(b). There has been no grant of jurisdiction to this Court to dissolve marriages or to award child support or alimony. *In re Warner*, 5 B.R. 434, 6 B.C.D. 788 (Bkrtcy.D.Utah 1980). "The federal courts and the state courts are engaged in a cooperative enterprise, not a competitive one," stated Judge Robert A. Johnson in denying a request by a debtor to reopen a state court judgment regarding dischargeability. *In re Danley*, 14 B.R. 493 (Bkrtcy.N.M., 1981). The debtor therein looked to the bankruptcy court instead of a state court for relief in a controversy arising in a domestic relations matter.

Certainly this Court has power to look at the language and intent of a state court judgment regarding alimony, child support, or property settlements to insure that the power of this Court is not abused by a mischaracterization. Legislative history makes it clear that despite the fact that federal courts do not have jurisdiction to determine domestic relations matters, Congress did intend that the bankruptcy courts should be able to determine whether characterizations of alimony or support made by state courts meet the meaning of such terms as they arise in the bankruptcy context. H.R.Rep.No.95–595, 95th Cong., 1st Sess., p. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. This power is particularly important in this district where a great many, if not the majority, of final decrees are prepared by counsel for one of the parties and submitted to the court for signature. It is true that in those cases where a final decree of dissolution of marriage is ambiguous as to the intent of the state court in granting or not granting alimony or child support, this Court has the inherent power to look at the intent of such decree to determine what was in fact meant. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re Rank*, 12 B.R. 418, 8 B.C.D. 76 (Bkrtcy.D. Kansas 1981); *In re Pelikant*, 5 B.R. 404, 6 B.C.D. 58 (Bkrtcy.N.D.Illinois 1980); *In re Daiker*, 5 B.R. 348 (Bkrtcy.D.Minnesota 1980); *In re Bell*, 5 B.R. 653, 6 B.C.D. 833 (Bkrtcy.W.D.Oklahoma 1980); *In re Allen*, 4 B.R. 617, 6 B.C.D. 576 (Bkrtcy.E.D.Tennessee 1980); *In re Warner, supra*; 3 *Collier on Bankruptcy*, Section 523.15(5) (15th Ed. 1979).

This Court recently discussed the distinction between alimony and a property settlement in *In re Djang*:

> Alimony is usually defined as "an allowance of money required to be paid by a former husband to his divorced wife for support and maintenance." *In re Smith*, 436 F.Supp. 469, 474 (N.D.Ga.1977); see *Cain v. Cain*, 91 N.M. 423, 575 P.2d 607 (1978); *Chavez v. Chavez*, 82 N.M. 624, 485 P.2d 735 (1971). The court *In the Matter of Warren H. Walder*, 2 B.C.D. 1205 (W.D.Wisc.1976), analyzed the concept of alimony and support payments in detail:

> > Alimony payments are intended to provide support for a spouse who may have no marketable skills or available time for employment due to his or her past and present obligations in the home, and support payments are intended to provide support for the children in that spouse's custody. (Cite omitted.) Public policy favors such payments as long as they are useful in furthering society's interest that families not be left destitute. (Cite omitted.) The alimony and child support obligations arise from the dependent relationship between a husband and wife which may be created by marriage. (Cite omitted.)

> *Id.* at 1207. In contrast, a property settlement deals with a division of property acquired by the spouses during marriage. *In re Alcorn*, 162 F.Supp. 206 (N.D.Cal. 1958). Such a settlement is usually based on the equities existing between the parties at the time of divorce rather than on the wife's needs and the husband's income. *In the Matter of Warren H. Walder, supra*.

New Mexico law recognizes the duty of support and provides that either spouse may be awarded alimony out of the other spouse's separate property. Sections 40-4-7 B(1) and 40-4-12, N.M.S.A.1978. Additionally, the property of the respective spouses may be set apart for the maintenance and support of their minor children. Section 40-4-7 B(3), N.M.S.A. 1978. However, it is apparent from the statutes cited that a wife has no special status as such. Her rights to support are not greater or less than those of her spouse.

In New Mexico, the factors which may be used as an aid in determining the nature of an obligations include:

(a) The value of and income producing nature of the property awarded to the wife;

(b) The needs of the wife after distribution of the community property;

(c) The wife's age, health and means to support herself;

(d) The work experience of the wife;

(e) The husband's earning capacity and his future earnings;

(f) The duration of the marriage;

(g) The amount of property owned by the parties;

(h) Whether the disputed obligation is modifiable; and

(i) Whether the disputed obligation terminates on the remarriage of the wife.

*See Seymour v. Seymour*, 89 N.M. 752, 557 P.2d 1101 (1976); *McClure v. McClure*, 90 N.M. 23, 559 P.2d 400 (1976); *Michelson v. Michelson*, 86 N.M. 107, 520 P.2d 263 (1974); *Chavez v. Chavez*, 82 N.M. 624, 485 P.2d 735 (1971); *Kuert v. Kuert*, 60 N.M. 432, 292 P.2d 115 (1956). *In re Djang*, Bankruptcy Nos. B75–1549 and B75–1550 (B.Ct.N.M.1980).

Once the court has determined that payment of a debt to a third party was in fact intended for the maintenance and support of an ex-spouse or children of the marriage, the question remains as to whether or not the court can or should find such debt nondischargeable. 11 U.S.C. Section 523(a)(5)(A) indicates that such a debt, assigned to a thus payable to another entity, is dischargeable under the provisions of the Bankruptcy Code. It would seem, considering the provisions of the Code and the intent expressed therein, that this is perfectly appropriate. *In re Spong*, 3 B.R. 619, 8 B.C.D. 150 (Bkrtcy.2d Cir. 1981) (Dissenting Opinion); *In re Crawford*, 8 B.R. 552 (Bkrtcy.D.Kansas 1981); *In re Allen, supra*. A major policy concern underlying the Bankruptcy Code is giving the downtrodden debtor a fresh start. By disallowing discharge of debts presented to the bankruptcy courts by creditors who argue that the debt is "in lieu of alimony," the policy of fresh start is totally defeated since these creditors are the very parties against whom the debtor was given protection by the fresh start policy. This clearly was not the intent of Congress in excepting from discharge debts characterized as alimony, maintenance or support. The exceptions to discharge, because they cut against fresh start, must necessarily be interpreted narrowly. *In re Spong* (Dissenting Opinion), *supra; In re Daiker, supra*. The purpose of the 523(a)(5)(A) exception is to protect ex-spouses and children. Courts which allow creditors to take advantage of this exception under the guise of alimony contravene the fresh start policy as well as widen the supposedly narrow exceptions to dischargeability.

Deciding this point in an opposite manner would seem to produce three results. The first is that creditors ordered to be paid in lieu of alimony pursuant to the terms of a divorce decree will have the right to appear in a bankruptcy proceeding alleging that pursuant to the terms of such a decree they are third-party beneficiaries and the debt to them should be declared nondischargeable. Second, in finding such debts nondischargeable, violence is done to well-settled domestic relations law. Third, the language of the statute is erroneously construed, and one part given more weight than another.

As to the second result, the incongruity in finding such debts nondischarge-

able becomes obvious in the following example. In *In re Spong, supra,* counsel for the divorced wife was before the court claiming that the attorneys fees awarded him were nondischargeable since they were ordered paid in lieu of alimony. The court found that such fees were in fact nondischargeable. One wonders if the result would have been different had the ex-spouse died or remarried prior to the issue of dischargeability being heard. One further wonders what logic might support a decision such as this if the ex-spouse should die or remarry shortly after the decision was rendered. It is clear that upon death or remarriage of an ex-spouse, all obligations for alimony terminate. *Hazelwood v. Hazelwood,* 89 N.M. 659, 556 P.2d 345 (1976); *McClure v. McClure,* 90 N.M. 23, 559 P.2d 400 (1976); *Chavez v. Chavez,* 82 N.M. 624, 485 P.2d 735 (1971). Finding that debts owed to third parties are nondischargeable has the effect of construing a state court decree to require the payment of alimony even after the death or remarriage of an ex-spouse.

In looking behind the terms of a divorce decree, it is obvious that by ordering payment to a third party in lieu of alimony, state courts intend, in fact, an award of alimony to the spouse measured by the amount of such debt or the monthly payments on such debt. The court, in effect, is ordering an amount of alimony paid to the ex-spouse, but authorizing the payment of same to be made to a creditor. If it is true that obligations in the nature of alimony terminate upon the death or remarriage of an ex-spouse, then it logically follows that finding a debt to a third-party creditor nondischargeable does not, in fact, comport with the intention to award support since, once that finding is made, the third-party creditor can enforce the collection of such debt regardless of the future circumstances of the ex-spouse.

Where does a finding of dischargeability leave an ex-spouse who has not remarried and is still living? The answer appears relatively simple. The ex-spouse would have the right to return to the state court or file the appropriate proceedings in this Court (1) to have the court determine if in fact the order of payment to a third party was intended to be alimony or support, and (2) if so, to have the court determine that since the state court judgment ordered the payment of alimony measured by the payment to the third-party creditor, that obligation, being no longer owed to the creditor, should be ordered paid directly to the party entitled to alimony.

This seems to accomplish the intent of Section 523(a)(5) in that it discharges debt owed to third parties, even if the payment of such debt was in lieu of alimony or support. On the other hand, it allows the court to order the payment of alimony to a spouse, which the Code makes clearly non-dischargeable, in an amount which, if appropriately found by the court, is measured by the amount of payment to a third-party creditor.

This result is at odds with decisions such as *In re Bell, supra; In re Pelikant, supra; In re Wells,* 8 B.R. 189 (Bkrtcy.N.D.Illinois 1981); *In re Knabe,* 8 B.R. 53 (Bkrtcy.S.D. Indiana 1981); and *In re Cineberry,* 9 B.R. 700 (W.D.Missouri 1981). When presented with facts similar to those in the case at bar, these courts found that payments made by debtors to third parties in lieu of alimony were nondischargeable since they represent Section 523(a) payments of alimony, maintenance or support. Section 523(a)(5)(A) says, however, that debts which are found to be alimony, maintenance and support *are* dischargeable *if* assigned to another entity voluntarily, by operation of law, or otherwise. The wording of the statute clearly indicates that the intent behind the nonassignment clause is that the section is to apply to more than just technical assignments. Congress certainly did not insert the words "or otherwise" in Section 523(a)(5)(A) as mere surplusage. These words are intended to open or broaden the scope of the meaning of assignment so that the word "assignment" cannot be interpreted narrowly so as to only encompass technical assignments. Consequently, cases holding that the Section 523(a)(5)(A) does not

apply to assignments which are not formal assignments must be criticized at the very least as lacking a close reading of the plain wording of the statute. *See In re Spong, supra; In re Rank, supra.* Likewise, cases which limit the scope of Section 523(a)(5)(A) to assignments to welfare agencies must also be criticized because the term "entity" defined in 11 U.S.C. Section 101(14) includes far more than just welfare agencies. *See In re Pelikant, supra; In re Knabe, supra.*

It also seems evident that in order to answer questions relating to statutory intent, one necessarily must read a statute as a whole unit, giving each word or each section equal weight unless the statute directs otherwise. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), on remand 602 F.2d 179, on remand 486 F.Supp. 115; *Hughes Air Corp. v. Public Utilities Commission of St. of Cal.,* 644 F.2d 1334 (C.A.Cal.1981). In reading Section 523(a)(5) as a whole unit, each part must be accorded no weight greater than any other part since the statute does not direct otherwise. Congress would not have included subsection (A) in such broad language if it merely intended to have it exist at the mercy of subsection (B). Courts which find nondischargeability of "in lieu of alimony" debts on the grounds that payments to a third party are actually alimony in effect read subsection (B) to the total exclusion of (A). *In re Richards,* 14 B.R. 276, 8 B.C.D. 111 (N.D.Illinois 1981); *In the Matter of Gilbert,* 10 B.R. 462 (Bkrtcy.N.D. Indiana 1981). If this were the correct reading of Section 523(a)(5)(A), then these courts have rewritten the statute and have found that it has only one operative subsection: (a)(5)(B). This certainly is not the proper reading of Section 523(a)(5).

Applying this reasoning to the facts of the case at hand, it is apparent that the debts to Rio Grande Valley Bank, Cessna Aircraft, First National Bank, Harold Dirks, Frank Skarritt, MasterCharge and VISA will be declared discharged. This ruling should not preclude the plaintiff from filing an appropriate proceeding in state court, based upon a change in circumstances, to have that court determine if it intended that payment of any or all of the above-listed debts were to be payments in lieu of alimony. Although this Court could normally make such a determination, it was not asked to do so, nor was any evidence presented which would allow it to do so. An appropriate order will enter.