In re Mattison Thomas CHAMPION, Debtor.

Mary J. CHAMPION, Plaintiff,

v.

Mattison Thomas CHAMPION, Defendant.

Bankruptcy No. 7–94–12337 MS. Adv. No. 94–1270 M.

United States Bankruptcy Court, D. New Mexico.

Nov. 3, 1995.

---

Stephan J.E. Sprague, Albuquerque, NM.

Douglas Booth, Santa Fe, NM.

*MEMORANDUM OPINION*
MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on August 1, 1995, for trial on the merits. The former wife of the debtor seeks a determination that an award of attorney's fees from a Texas divorce decree is nondischargeable as

alimony, maintenance, or support under 11 U.S.C. § 523(a)(5). Having considered the arguments and legal memoranda of counsel, reviewed the exhibits, and being otherwise fully informed, the Court grants judgment in favor of the plaintiff.

## FACTS

In August of 1993, Mary Champion filed a petition for divorce in Kendall County, Texas, seeking a dissolution of her marriage to Thomas Champion, appointment as managing conservator of the couple's three minor children, and for child support and division of the marital estate. On February 6, 1994, while the divorce was still pending, Thomas Champion shot Mary Champion in the head with a handgun. The three Champion children witnessed this act. Mary Champion sustained severe injuries to her jaw, vocal chords and throat which left her unable to attend the divorce trial in March, 1994, and unable to work. A final decree of divorce was filed on April 13, 1994, which awarded Mary Champion sole custody of the children, lump sum child support in the form of a one-half interest in certain lease agreements, virtually all of the marital property, the remaining one-half interest in the lease agreements, and attorney's fees in the amount of $34,-000.00. Also in April, 1994, Thomas Champion pled guilty to a felony charge and was sentenced to fifteen years in prison. On September 7, 1994, Thomas Champion filed a petition for relief under chapter 7 of the bankruptcy code.

## DISCUSSION

■ Federal law governs the characterization of debts to former spouses for purposes of nondischargeability under § 523. *In re Young,* 35 F.3d 499 (10th Cir.1994); *In re Jones,* 9 F.3d 878 (10th Cir.1993); *In re Dirks,* 15 B.R. 775 (Bkrtcy.D.N.M.1981). Courts may also look to underlying state law for guidance. *In re Hicks,* 65 B.R. 227 (Bkrtcy.D.N.M.1986); *In re Cowley,* 35 B.R. 520 (Bkrtcy.D.Kansas 1983).

■ The law is well settled that attorney's fees awarded to a spouse may be nondischargeable when they are in the nature of support or maintenance. *In re Sposa,* 31 B.R. 307 (Bkrtcy.E.D.Va.1983). *See also In re Daumit,* 25 B.R. 371 (Bkrtcy.D.Md.1982); *In re Painter,* 21 B.R. 846 (Bkrtcy.D.Ga. 1982). In *In re Sampson,* 997 F.2d 717 (10th Cir.1993), the Tenth Circuit has articulated a rule for determining the actual nature of post-marital obligations. This rule squares the standard announced in *In re Yeates,* 807 F.2d 874 (10th Cir.1986) with the seemingly inconsistent standard which followed in *In re Goin,* 808 F.2d 1391 (10th Cir.1987). The *Yeates* opinion stated that the "intention of the parties" is the initial inquiry on the question of dischargeability and any characterization contained in "a written agreement between the parties" will normally control on the issue of intent. *Yeates,* 807 F.2d at 878. The *Goin* case, a few weeks later, required a bankruptcy court to "look beyond the language of the agreement to the intent of the parties and to the substance of the obligation." *Goin,* 808 F.2d at 1392. The *Sampson* court, reconciling the two cases, held that whether an obligation is nondischargeable under § 523(a)(5) is a "dual inquiry into both the parties' intent and the substance of the obligation." *Sampson,* 997 F.2d at 723.

■ The facts of the Champion case do not permit an initial inquiry into the intent of the parties, as prescribed by *Sampson.* In the present instance, disputed matters were fully litigated rather than privately agreed upon, and the document under scrutiny is the Texas divorce decree rather than a written agreement between the parties. The Tenth Circuit has provided additional direction for this situation. According to the holding in *In re Young,* 35 F.3d 499 (10th Cir.1994), the basic inquiries for the purpose of deciding whether an obligation imposed pursuant to a decree constitutes nondischargeable support, are (1) what did the court intend? and (2) does the evidence adduced in support of the decree justify that intention? This standard from *Young* is simply the *Sampson* dual inquiry into intent and substance transferred to the context of a contested divorce.

■ Investigation into the intent of the divorce court begins with the decree. Before analyzing the decree's language and structure, however, the Court notes that Texas

law does not permit an award of alimony. For an alimony provision to be enforceable in Texas, it must have its genesis in a contractual agreement between the parties which is incorporated by reference into the final decree. *Mackey v. Mackey,* 721 S.W.2d 575, 578 (Tex.App.1986); *In re Robinson,* 122 B.R. 502 (Bkrtcy.W.D.Texas 1990). The Champion divorce decree could not on its face reflect an award of alimony, even if the Texas court intended the award to be in the nature of support. Conversely, the presence of the label "Division of Marital Estate," which appears in the Champion divorce decree, is not dispositive of the question of the court's intent. In Texas, what appears to be a division of property may contain a substantial element of alimony-substitute, support or maintenance, however termed. *In re Joseph,* 16 F.3d 86 (5th Cir.1994).

Included in the record is Plaintiff's Exhibit # 2, the transcript of the divorce court's ruling from the bench, which includes the following:

> In regard to division of property, I am taking into consideration a great deal of specific instances of harm that Mrs. Champion has suffered in the past and will suffer in the future in order to come up with what I think will be an unequal division of the property, such as cost of the children's therapy in the past and in the future, the mother's cost of therapy for the physical and emotional harm in the past and future, the attorney's fees that have been incurred, experts' fees, loss of earning capacity by the mother, and there are probably others if that's not enough.

This oral ruling is an ideal resource for ascertaining the divorce court's intent in making the particular allocations of property and debt which appear in the decree, including the award of attorney's fees. The divorce court's straightforward announcement—"I am taking into consideration . . ."—permits this Court to avoid speculation and turn to specific factors recited.

The divorce court's references to future harm, to costs for future therapy, and to loss of earning capacity indicate a concern for Mrs. Champion's ability to provide for her own future support. These factors are similar to those present in *In re Sampson,* 997 F.2d 717 (10th Cir.1993), in which a finding of nondischargeability was supported by the fact that the wife had no job, no marketable skills, and a health condition which limited her ability to work. *Id.* at 725. The divorce court's considerations also fit within the list of factors this Court set forth in *In re Dirks,* 15 B.R. 775, 779 (Bkrtcy.D.N.M.1981): needs of the wife; the wife's age, health, and means to support herself; work experience of the wife; and the income producing nature of the property awarded. Even the reference to "unequal" property division indicates the divorce court intended to accomplish something other than the mere division of marital debts and assets.

The court's award of attorney's fees may also be attributed to an intention to provide support for the three minor children. The divorce decree provides an outright award to the children of a one-half interest in certain lease/sublease agreements as "lump sum child support." An undetermined portion of the attorney's fees is directly related to this primary support obligation, and thereby meets the requirement for nondischargeability used in *In re Miskovsky,* 88 B.R. 360 (Bkrtcy.W.D.Okla.1987), *In re Silverstein,* 186 B.R. 85 (Bkrtcy.W.D.Tenn.1995), *In re Coleman,* 37 B.R. 120 (Bkrtcy.W.D.Wis. 1984), *In re Sposa,* 31 B.R. 307 (Bkrtcy. E.D.Va.1983) and others. This Court has also ruled previously that insuring a full and fair litigation of custody matters is part of a debtor's duty to support his children. *In re Hicks,* 65 B.R. 227 (Bkrtcy.N.M.1986) quoting with approval from *In re Gedeon,* 31 B.R. 942 (Bkrtcy.D.Colo.1983).

It is true that certain elements are missing which would contribute to the determination that the award is in the nature of support. No obligation terminates upon the remarriage or death of Mrs. Champion. The defendant's earning capacity and future earnings do not exceed those of Mrs. Champion. The defendant, in fact, urges the Court to rely on changes in the Bankruptcy Code "at 11 USC 5213(15)," presumably 11 U.S.C. § 523(a)(15), for the proposition that the defendant's current financial situation should be dispositive. The defendant draws the

Court's attention to "the imbalance of income" in favor of Mrs. Champion, pointing out that the defendant was "destitute" at the time of the divorce. (Defendant's Memorandum of Law, p. 4.)

 Scrutiny of spouses' relative financial positions *is* a proper exercise for determining the actual nature of an award contained in a divorce decree; however, the unique facts of the Champion case require more than a simple comparison of dollar amounts. The defendant's current financial situation—his incarceration without income—is the result of his own violent criminal act. The defendant points to this lack of income as a reason he should be found more deserving of discharge than Mrs. Champion is in need of support. This Court is not persuaded, particularly when the same criminal act which left Mr. Champion without income is a major cause of Mrs. Champion's inability to support herself.

 The term "support" as used in § 523(a)(5) is entitled to broad application. *In re Jones,* 9 F.3d 878, 881 (10th Cir.1993). This Court finds the Texas divorce court intended the award of attorney's fees to be in the nature of support.

Having determined the intention of the divorce court, this Court must now complete its inquiry by deciding if the evidence adduced in support of the award justifies that intention. *In re Young,* 35 F.3d at 501. The evidence presented at the divorce trial, through witness testimony and the reading of deposition testimony into the record, includes the following:

(1) Mrs. Champion had not worked for 12–13 years and did not currently possess skills necessary to obtain a job which would support herself and her children.

(2) The gunshot wound inflicted by the defendant left Mrs. Champion physically unable to support herself and her children.

(3) The family corporation, Verano, Inc., for which Mrs. Champion was working prior to the shooting incident, is defunct.

(4) Mrs. Champion will have on-going needs for physical and emotional therapy.

(5) Mrs. Champion's one-half interest in the lease/sublease agreements would provide income in the form of monthly payments.

The Court finds this evidence more than adequate to justify the divorce court's intention to award attorney's fees as a form of support.

In examining the equities of this case, the Court also notes the record contains unrefuted testimony from Mrs. Champion's attorney to the effect that the contested attorney's fees were more than tripled by Mr. Champion's unreasonable refusal to accept, as he had agreed to do, the results of a psychiatric evaluation with respect to child custody and from the increased difficulty in preparing for trial which was an inevitable consequence of Mrs. Champion's injuries. In *In re Cowley,* 35 B.R. 520 (Bkrtcy.D.Kansas 1983), the court found the plaintiff wife, seeking nondischargeability of attorney's fees, should not be saddled with expenses she was forced to incur due to actions taken by the debtor. The same reasoning applies here.

## CONCLUSION

For the foregoing reasons, the Court finds the debt for attorney's fees in the amount of $34,000.00 to be nondischargeable. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Judgment shall be entered accordingly.

## JUDGMENT

IN ACCORDANCE WITH the Memorandum Opinion issued herewith, the debt for attorney's fees in the amount of $34,000.00 is nondischargeable.